174 N.J. Super. 135 (1980)
415 A.2d 1188
RAYMOND SHATZ AND DORIS SHATZ, PLAINTIFFS-APPELLANTS,
v.
TEC TECHNICAL ADHESIVES, A DIVISION OF THE H.B. FULLER COMPANY, DEFENDANT-RESPONDENT, AND CARUSO MASONRY CORPORATION, LOUIS J. GIACOMOZZI T/A LOU'S ELECTRIC, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 28, 1980.
Decided May 13, 1980.
*138 Before Judges BISCHOFF, BOTTER and MORTON I. GREENBERG.
Michael J. Izzo, Jr., attorney for appellants.
Montano, Summers, Mullen & Manuel, attorneys for respondent (G. Wesley Manuel, Jr. on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
Plaintiffs brought this action against Caruso Masonry Corporation (Caruso), Louis J. Giacomozzi trading as Lou's Electric (Lou's Electric) and TEC Technical Adhesives (Tec), a division of the H.B. Fuller Company. Plaintiffs sought damages by reason of the destruction on December 12, 1972 by fire of their home in Cherry Hill which was in the final stages of construction. Plaintiffs alleged that Caruso, which was installing a slate floor, and Lou's Electric, which was an electrical contractor, had caused the fire by their negligence. Liability was asserted against Tec on theories of strict liability, in tort, breach of warranty and negligence with respect to supplying a contact adhesive used in the project for installation of the floor. After jury selection but before the start of presentation of evidence Caruso and Lou's Electric settled with plaintiff so that the action went forward only against Tec as an actual participating defendant. However, the liability of Caruso and Lou's Electric was nevertheless adjudicated so as to determine the consequence of their settlements in the event plaintiffs recovered against Tec. See Theobald v. Angelos, 44 N.J. 228 (1965). After a lengthy trial the judge submitted the case to the jury in the form of seven interrogatories. R. 4:39-1. The jury returned a verdict that Caruso and Lou's Electric were each guilty of negligence which proximately caused the fire, that Tec was not "negligent or derelict" and that plaintiffs' damages were $136,582.19. Since plaintiff had already settled with Caruso and *139 Lou's Electric, the practical consequence of the judgment was that plaintiffs obtained a no cause for action.
Plaintiffs appeal, alleging five grounds for reversal: (1) the trial judge improperly restricted plaintiffs from introducing evidence of a labeling change by Tec made prior to the fire; (2) the judge should have permitted plaintiff to introduce evidence of defendant's alleged violation of the Federal Hazardous Substances Act, 15 U.S.C.A. § 1261 et seq.; (3) he improperly instructed the jury as to the consequence of the settlements, and in particular, erroneously instructed the jury that the settling defendants were presumed to be negligent; (4) he abused his discretion in restricting testimony by plaintiffs' expert on the adequacy of the warnings of the properties of Tec's product; (5) the charge was misleading with respect to proximate and intervening cause and with respect to strict liability in tort.
The germane facts developed were as follows. Plaintiffs' home was being custom built. On December 11, 1972 Allan Perez, an employee of the general contractor on the project, purchased a five-gallon pail of TEC 21F, a product of Tec, from a distributor in New York. TEC 21F was a mastic cement to be used by Caruso for installation of a slate floor in the swimming pool dressing room in the east wing of the house. There was evidence that Perez read the label on the container of TEC 21F and determined that the product was safe for use when not used near flames or heat, and thus gave the product to the employees of Caruso with instructions not to smoke while applying it and to keep it away from open flames. The Caruso personnel applied the TEC 21F to the floor in the pool dressing room. That room was seven by ten feet and had no windows for cross-ventilation. Unfortunately one of the Caruso workers brushed an electrical wire which fell to the floor setting the TEC 21F on fire. The fire spread and damage was extensive. The container of TEC 21F from which the material had been taken was destroyed in the fire.
*140 The evidence further showed that Perez returned to New York following the fire and bought a second container of TEC 21F from the same dealer from whom the destroyed container had been purchased. The second container had a printed warning reading as follows:
DANGER: EXTREMELY FLAMMABLE MIXTURE DO NOT USE NEAR FIRE OR FLAME NYFD C of A NO. 3365.
IMPORTANT: Contains Hexane-Extinguish all flames and pilot lights. Keep the product and its vapors away from heat, sparks and flames. Avoid prolonged breathing of vapors and repeated contact with skin. Do not take internally. If swallowed do not induce vomiting. Call a physician. Keep out of reach of children. Keep container closed when not in use.
The label on the second container did not give specific warnings about the need for ventilation or the possibility that the vapors from the product could explode. There was testimony from which the jury could have concluded that the warnings on the label on the second container were the same as the warning on the first container.
Plaintiffs ascertained during discovery that Tec had changed the label on TEC 21F in 1972 before the fire. The new label read as follows:
DANGER
EXTREMELY FLAMMABLE.
VAPORS MAY CAUSE FLASH FIRE, VAPORS HARMFUL, IRRITANT.
Read precautions on back panel. NYFD C of A NO. 2880.
IMPORTANT-Contains Hexane vapors may ignite explosively. Prevent build-up of vapors-open all windows and doors-use only with cross ventilation. Keep away from heat, sparks and open flame. Do not smoke, extinguish all flames and pilot lights, and turn off stoves, heaters, electric motors, and sources of ignition during use and until all vapors are gone. Avoid prolonged breathing of vapors and repeated contact with skin. Do not take internally. If swallowed do not induce vomiting. Call a physician. Keep container closed when not in use.
KEEP OUT OF CHILDREN'S REACH
*141 We think it clear that the trial judge should have permitted plaintiffs to prove that Tec had changed the label before the fire.[1] There are significant differences between the two labels. The newer label cautioned the user of TEC 21F to prevent build-up of vapors, to use it only with cross ventilation. It also cautioned the user to turn off all stoves, heaters, electric motors and sources of ignition during the use of the product and until the vapors are gone. The original label simply warned against use of TEC 21F near sparks and flames. But the judge rejected the evidence on the basis of Evid.R. 51 which provides:
When after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.
This rule should not have been used to exclude proof of change since the jury could have found that the product sold did not contain the changed label but that the change had been adopted for the product before the fire. Evidence of repairs made after an accident, though perhaps relevant as to a defendant's breach of duty, is excluded so that a person after an accident is not discouraged from making repairs by the anticipation of being confronted at trial with an argument that his own remedial conduct shows the inadequacy of prior conditions. Lavin v. Fauci, 170 N.J. Super. 403 (App.Div. 1979); Hansson v. Catalytic Constr. Co., 43 N.J. Super. 23 (App.Div. 1956). But we perceive of no social policy furthered by allowing a defendant to keep from the jury evidence of remedial conduct undertaken before an accident. Certainly we ought not to presume that defendant would have declined to change its label in apprehension that in claims arising from accidents that had not yet happened the prior label by comparison would be asserted to *142 have given inadequate warnings. Indeed as a matter of policy the evidence of change should have been admitted. The exclusion of such evidence would encourage manufacturers who had marketed products inadequately labeled not to recall them when labels were changed since the manufacturer would not fear confrontation with the change in the event of mishap and a claim being made. The law should not encourage the marketing of defective products.
Defendant argues that the change in labeling was properly excluded pursuant to Evid.R. 4 since the change was related to regulations under the Federal Hazardous Substances Act and would have confused the jury. We disagree. The labeling change gave more comprehensive warnings and since reflective of the characteristics of the product was germane regardless of the presence or absence of any regulation requiring the improved notice. Since the user of the product would want to know of its dangers, evidence of the labeling change was admissible even if not related to the Federal Hazardous Substances Act.
Tec also argues that certain references by counsel for plaintiffs to the content of the label rendered any error harmless with respect to exclusion of the evidence of change. We disagree. It is not contended that the jury knew from these questions that Tec had changed the label before the fire. Plainly, if proof of the new label attributing it to defendant had been admitted, the jury could have found that defendant itself recognized the additional hazards from its product and thus was liable since the TEC 21F with the prior label remained on the market. We do not see how a general reference to a different label without clear attribution could have led to such a finding.
In addition, the trial judge erred in excluding plaintiffs' evidence in which they attempted to show that TEC 21F was not *143 labeled in accordance with regulations adopted under the Federal Hazardous Substances Act, 15 U.S.C.A. § 1262(b). Pursuant to that statute there was in effect at the time of the sale of the product a regulation which with respect to "extremely flammable contact adhesives, also known as contact bonding cements, when distributed in containers intended or suitable for household use" and "similar liquid or semi liquid articles" having a flashpoint at a below 20 degrees Fahrenheit required cautionary labeling. 35 Fed.Reg.. 8358 (1970); 16 C.F.R. § 1500.133. Significantly, the labeling adopted by defendant in 1972 substantially complied with the labeling requirement under the regulation. The labeling on the container acquired after the fire did not so comply since the regulation required a warning that the user of the product should "Prevent build up of vapors  open all windows and doors  use only with cross-ventilation." The absence of this warning could well have been critical since the fire started in a room without cross-ventilation. The evidence presented to the court supported a finding that defendant violated this statute by not complying with regulations under it. In excluding evidence of the violation the court relied on a definition of "extremely flammable contact adhesive" contained in regulations proposed and adopted in 1977 to ban the sale of such products. 16 C.F.R. § 1302.3; 42 Fed.Reg. 63731 (1977). We do not see how such a later regulation could permit the judge to exclude evidence that TEC 21F sold in 1972 was an extremely flammable contact adhesive or similar liquid or semi-liquid article as that item was defined in 1972. Certainly by its terms the 1977 regulations do not purport to be retroactive so as to control a definition as of a prior time. We also point out that not until P.L. 95-631, § 9, 92 Stat. 3747, adopted November 10, 1978, was the Consumer Product Safety Commission authorized to adopt regulations defining extremely flammable.
But certainly these later adopted statutory and regulation amendments cannot mean that there was no competent evidence *144 from which the jury could have found that TEC 21F was an "extremely flammable" substance, as defined in the Federal Hazardous Substances Act as of 1972. The evidence showed that the TEC 21F had a flash point below 20 degrees Fahrenheit and thus was within the statutory definition of "extremely flammable" in 1972. 15 U.S.C.A. § 1261(l). Further there was evidence from plaintiffs' expert, Dr. Malcolm Reider, from which the jury could have concluded that TEC 21F was a product within 16 C.F.R. § 1500.133. Thus, the trial judge should have permitted proof that the TEC 21F was not properly labeled under the Federal Hazardous Substances Act and the regulations adopted pursuant thereto.
Without doubt, exclusion of this evidence was highly prejudicial. A violation of the statute and regulations under it was evidence of negligence. Braitman v. Overlook Terrace Corp., 68 N.J. 368, 385-386 (1975); Bortz v. Rammel, 151 N.J. Super. 312, 320 (App.Div. 1977), certif. den. 75 N.J. 539 (1977).
The trial judge erroneously charged the jury that Caruso and Lou's Electric as settling defendants were presumed to be negligent and that plaintiff had the burden to prove that they were not negligent. The significance of the settlement and the finding of negligence or not of the settling defendants was with respect to credit for the settlement against any verdict returned against Tec. If the settlor was a joint tortfeasor, Tec was entitled to a pro rata credit against any judgment; if the settlor was not a joint tortfeasor, the credit would be pro tanto but could not exceed a pro rata credit. Theobald v. Angelos, supra 44 N.J. at 241.[2] Thus, after the settlement it was in plaintiffs' interest that Lou's Electric and Caruso not be regarded as tortfeasors; the opposite was true for Tec.
*145 Certainly there is some support for the argument that a plaintiff has the burden of proof to show that a settling defendant is not a tortfeasor. Hoeller v. Coleman, 73 N.J. Super. 502, 505 (App.Div. 1962), certif. den. 38 N.J. 362 (1962); Kuna v. Hollman, 137 N.J. Super. 199, 205 (L.Div. 1975).
But we hold that the presumption disappears once the negligence of the settlor is actually placed in issue at trial. A plaintiff settling with one defendant does not, absent a contrary intent, release all defendants unless he obtains full satisfaction or satisfaction intended as such for his claims. Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548 (1980); McFadden v. Turner, 159 N.J. Super. 360 (App.Div. 1978). Where a plaintiff does release one defendant the remaining defendant cannot receive contribution from the settlor, but in a case not involving comparative negligence obtains credit, pro rata or pro tanto, as the case may be on any judgment that may be rendered against him. Thus, after the settlement it is defendant and not plaintiff who has the interest in establishing negligence by the settlor. We see no reason why a settlement should reverse the ordinary rule that a person is not presumed to be culpable. Dziedzic v. St. John's Cleaners and Shirt Launderers, Inc., 53 N.J. 157, 161 (1969).
There is no reason to give the remaining defendant this advantage at trial since, in the absence of settlement, if he sued for contribution from another party, he would have the burden of proving that that party was negligent. Mijon v. Acquaire, 51 N.J. Super. 426, 440 (App.Div. 1958), certif. den. 28 N.J. 146 (1958). Nothing in the original settlements would indicate any intention of the parties to it to benefit the remaining defendant. Thus, if there is a presumption of negligence, it must be imposed *146 by the law. But to impose such a presumption would discourage settlements since a plaintiff would know that by settling with one defendant he would create a problem of overcoming the presumption at trial. The law favors settlements and thus a result discouraging settlement of multiple-party litigation should be avoided. Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App.Div. 1974).
We do not suggest that our holding would necessarily apply in a case in which a person settling a claim had never been made a party to the action and his liability is not adjudicated in the action against the remaining defendant. That case is not before us, thus we do not decide it. We hold only that when a defendant to an action settles but his liability remains in issue the burden of proof stays on the party asserting his culpability, in this case Tec.
The trial judge clearly abused its discretion in not permitting Dr. Malcolm J. Reider to testify as to the alleged inadequacy of the labeling of TEC 21F. There was no question but that he was fully qualified as an expert on the properties of TEC 21F. While it is true that the judge could find that he had no special expertise in the actual writing of labels, certainly his knowledge of the product was sufficient to permit him to state a conclusion as to the adequacy of the warnings. In fact, the language of both labels was not at all complicated. To know the sufficiency of warnings it is not necessary to be a writer. Reider had sufficient expertise to testify as to the adequacy of the labeling. See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 411 (1960); Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141-142 (1950). The ruling was highly prejudicial since plaintiffs were deprived of testimony going to the heart of their case.
Finally, we agree with plaintiffs' assertion that the charge was erroneous and unfair. Plainly, the charge on strict *147 liability in tort was unfair even taking the charge as a whole. It is sufficient to note that the judge mixed the concepts of negligence and strict liability so that only after the closest reading does it appear that two separate concepts were being presented to the jury. Specifically, the judge charged as follows:
You will recall that the thrust of the plaintiffs' case, as it relates to the defendants, Caruso Masonry, Louis J. Giacomozzi, trading as Lou's Electric, and Tec Technical Adhesives, a division of H.B. Fuller Company is that they were negligent. In addition, the thrust of their case is that as to the Fuller Company the product, Tec 21 F was defective.
Now, a defective product by definition is a product that is not fit for ordinary purpose for which that product is sold and used. The plaintiff has the burden of proof that is required to satisfy you by evidence presented.
You, the jury, by evidence presented in this case that Tec 21 F was defective according to that definition; and, further that the defect was the proximate cause or the probable producing cause of the incident here in question; that is, the fire on December 12, 1972 and the resultant damage.
That conclusion must be demonstrated to you by evidence that was presented during the course of this trial that causes you to conclude that that is the more probable cause rather than the mere possible cause.
There must be a preponderance or a greater weight of the believable evidence demonstrated in probability as to this conclusion; not a conclusion on your part that is founded in speculation or surmise.
Generally speaking, you should understand that the manufacturer or processor of a product is under a duty of exercising reasonable care in the design and manufacturing and processing of a product to protect those who may be reasonably expected to use the same; to see that it is fit for the ordinary purposes for which such articles are intended to be used and sold for that intended purpose while it is being used for the purpose for which it is intended. To put it another way, the manufacturer is under a duty to exercise reasonable care in the production of its product to avoid unreasonable risk of harm from the use thereof by those likely to be exposed to it in its intended use.
Thus the maker of an article which is intended for sale or use by others is required to use reasonable care and skill in designing and producing it, so that it is reasonably safe for the purpose for which it is intended.
Proof of the manufacturer's negligence in the making and handling of a product may not be required; but proof of the defective deviation from the standard of reasonable acceptability is in fact required to support the contention of defective product.

*148 In order for the manufacturer to be liable under the foregoing rule, the deviation, the deficiency or defect by way of deviation from the standard of reasonable acceptability of that product which is asserted here, which is asserted to have been the proximate cause of the condition which brought about the incident of December 12, 1972, and the plaintiffs' damage must be shown to have been one that existed at the time the product left the control of the manufacturer.
You should understand also that a manufacturer or processor not only owes the duty to exercise reasonable care in the manufacture of its product, but likewise owes the companion duty to warn buyers and users of the latent limitations of an even perfectly produced product; the use of which is dangerous if the user is ignorant as to those limitations and the manufacturer has no reason to believe that the user will recognize that danger.
The situation was aggravated by the form of the interrogatory submitted to the jury which asked the jury whether Tec was "negligent or derelict." The term "derelict" in the context of this case could mean negligent. See Webster's New Twentieth Century Dictionary (2 ed. 1975), 490. The capacity for prejudice in this charge is quite clear since plaintiffs were asserting that defendant was strictly liable in tort by reason of inadequate warnings. See Torsiello v. Whitehall Laboratories, 165 N.J. Super. 311, 320 (App.Div. 1979), certif. den. 81 N.J. 50 (1979). The charge unduly referred to a defective product without emphasizing the issue concerning the adequacy of the warnings. This was mentioned at the end of the above excerpt, but the preceding instructions failed to mold the charge to the particular issue in the case. See Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-592 (1966). At the very least, the charge was unclear and possibly somewhat misleading.
The trial judge in the charge mentioned "the" proximate cause in a singular way several times, though it did advise the jury there could be more than one proximate cause. We assume that on a retrial more appropriate language will be given and a complete definition of proximate cause will be given. Moreover, on the retrial the case should be submitted to the jury against *149 Tec solely on a theory of strict liability in tort. Torsiello v. Whitehall Laboratories, supra, 165 N.J. Super. at 318 319.
The matter is reversed and remanded for a new trial.
NOTES
[1] We have taken the wording of the labels from plaintiffs' brief. Defendant has not disputed the language and admits that there was a label change.
[2] This case was not governed by comparative negligence since the fire was December 12, 1972 and comparative negligence was adopted in 1973. L. 1973, c. 146; N.J.S.A. 2A:15-5.1. Thus, the modifications of contribution caused by the adoption of comparative negligence and explained in Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548 (1980), and Rogers v. Spady, 147 N.J. Super. 274 (App.Div. 1977), have no application to this case.