261 N.J. Super. 85 (1992)
617 A.2d 1235
BRUNO MOLINO AND NERINA MOLINO, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
B.F. GOODRICH COMPANY, DEFENDANT-RESPONDENT, AND FIRESTONE TIRE & RUBBER COMPANY, ANTHONY DEBIASSE, INDIVIDUALLY AND D/B/A HICKORY TREE GARAGE, RIDGE TIRE & AUTO CENTER, MORRISTOWN TIRE CO., INC., JOHN DOE CORPORATION, AND JOHN DOE, INDIVIDUALLY, SAID DOES BEING FICTITIOUS AND UNKNOWN ENTITIES OR PERSONS, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1992.
Decided December 18, 1992.
*89 Before Judges SHEBELL, A.M. STEIN, and CONLEY.
William H. Sheil argued the cause for appellants.
William J. Prout, Jr., argued the cause for respondent Uniroyal Goodrich Tire Company (incorrectly pleaded as B.F. Goodrich Company) (Tompkins, McGuire & Wachenfeld, attorneys; William J. Prout, Jr., of counsel and on the brief; Joseph T. Calabria, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Plaintiffs, Bruno Molino, and his wife, Nerina Molino, appeal from the Law Division's dismissal of their suit against defendant, Uniroyal Goodrich Tire Company (Uniroyal), for injuries Mr. Molino suffered when a tire and rim assembly exploded on *90 June 19, 1987, while he was handling an inflated Goodrich tire that was mounted on a multi-piece rim manufactured by Firestone Tire & Rubber Company (Firestone). We reverse and remand.
Plaintiffs sued Uniroyal as the manufacturer of the tire; Firestone; Ford Motor Company, the manufacturer of the truck; the tire company which may have mounted the spare tire onto the rim assembly sometime prior to the accident; and other defendants including the garage where Molino suffered his injuries. Certain defendants, including Ford Motor Company, were granted summary judgments before trial. Before jury selection, the judge granted Uniroyal's motion in limine to exclude evidence of warnings on tires manufactured after 1973, the date the tire in this case was manufactured. On the second day of trial, a settlement agreement was reached between plaintiffs and all remaining parties except for Uniroyal.
The trial continued against Uniroyal. Mrs. Molino testified that she had to constantly supervise her husband due to the fact that he suffered serious head injuries and brain damage from the accident. Molino took the stand but had no recollection of the events leading to the accident. Medical testimony revealed that his condition was unlikely to change.
On the liability issue, plaintiffs introduced expert testimony from Loren Forney. Forney outlined his extensive knowledge about tires and rim assemblies and testified that a warning should have been placed on the tire. The court, however, determined that Forney could offer no testimony concerning the language or adequacy of any warning because he admittedly had no background in ergonomics. Therefore, Uniroyal moved for a directed verdict and involuntary dismissal. The trial judge granted the motion and this appeal followed.
Molino operated a landscaping and paving business from his home in Chatham. He purchased a used 1967 Ford dump truck with dual rear wheels for the business. The events leading to the accident are sketchy because of Molino's lack of memory. *91 It appears that on June 19, 1987, he drove the dump truck to Hickory Tree Garage to change a flat tire on the right rear of the truck. The spare tire, already mounted onto the rim assembly, was in the back of the dump truck when Molino arrived at Hickory Tree Garage.
The spare tire, a Goodrich 12 ply Silvertown Rib Logger, size 10.00-20, was approximately "chest" high. It was mounted on a Firestone "R" type multi-piece rim, manufactured in the 1930s. Three parts were involved in the rim assembly. The major part was the removable base rim. The remaining parts were the side ring and the lock ring which secure the rim assembly to the tire after the tire is put in place. Only after these parts are "locked in place" is air to be put "in the assembly." Uniroyal did not manufacture such rim assemblies. Molino suffered serious head injuries and the loss of an eye when the tire and rim assembly exploded after he attempted to affix the already inflated tire to the truck.
Both the tire and the rim assembly were admitted into evidence at trial. Plaintiffs' expert testified that nothing was wrong with the tire but that the fifty-five to sixty-year-old rim assembly was "[b]adly rusted, corroded," the rivets were gone, and a piece of the lock ring was missing. Forney testified that the tire contained no warnings or instructions "to people who are using these parts." Although he was not permitted to testify about what an adequate warning should have stated, he did indicate that a warning should have been on all parts of the assembly, including the tire. The warning should have, according to Forney's testimony, contained language that the tire be secured or fastened to the truck before inflation, that persons should stand some distance away, that the tire should not be replaced if the rim assembly was broken or corroded, and that only specially-trained persons should mount these tires.
Forney also testified that if the wheel assembly was secured, it could not cause injury in the event of explosion because the wheel is not going to go anywhere since it is secured to the *92 truck, and because the rings would be on the inside, away from the person installing the tire. Forney stated that in his opinion, based on a reasonable degree of engineering and scientific probability, if an adequate warning were on the tire, it probably would have prevented the accident.
In dismissing plaintiffs' case, the trial judge stated:
It's my conclusion of other analyses that I made in reading these authorities, the briefs, the facts as I understand them in this case which are undisputed so far, that this is not a type of case where an issue of warning should be referred to the jury absent some competent expert testimony as to what that warning should have been, what its result would have been and how it would have prevented this incident from occurring.

Secondly, I don't find that there is a need to have the defendant tire company Goodrich warn about a possible defect in the rim furnished by Firestone and that's in connection with the case I just cited. I feel that there should have been something more in the nature of ergonomics in order to demonstrate how such a warning would have prevented this accident and what the outcome would have been whatever that warning would be. [Emphasis added].
Plaintiffs maintain that the trial court erred in holding that Uniroyal had no duty to warn of potential dangers associated with the multi-piece rim assembly because the danger evolves from the "entire pressured assembly and not in the individual parts." Furthermore, plaintiffs contend that considering the surface area, the tire provided the best location for the warning. Uniroyal alleges that liability can only be imposed on a manufacturer if a defect in its own product causes harm, and plaintiffs' own expert testified that the tire could be used safely and was not defective.
New Jersey's Product Liability Act, N.J.S.A. 2A:58C-2, provides:
A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner. [N.J.S.A. 2A:58C-2 (emphasis added)].
*93 Our Supreme Court has held: "Under New Jersey law a manufacturer is strictly liable for damages resulting from use of its products when the manufacturer fails to produce and distribute a product that is fit, suitable, and safe for its foreseeable purposes." Feldman v. Lederle Laboratories, 125 N.J. 117, 144, 592 A.2d 1176 (1991), cert. denied, ___ U.S. ___, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992) (Feldman II). If a product contains an inadequate warning or fails to warn altogether, it may be unsafe. Ibid. In addition, when a manufacturer fails to include a warning on a product, but subsequently learns of dangers associated with the product, the manufacturer has a duty to warn of the dangers "as soon as reasonably feasible." Feldman v. Lederle Laboratories, 97 N.J. 429, 456, 479 A.2d 374 (1984) (Feldman I). The goal of warnings is that "the risk from the product be reduced to the greatest extent possible without hindering its utility." Beshada v. Johns-Manville Products Corp., 90 N.J. 191, 201, 447 A.2d 539 (1982).
Here, the tire manufactured by Uniroyal contained no warning. Although the rim assembly to which the tire attached was not itself the product of Uniroyal and was never in its possession or control, this particular tire was made to be used with a multi-piece rim assembly. Forney, plaintiffs' expert, testified that when the tire was manufactured in 1973, the industry "knew they were having problems with the multi-piece rims." Forney established that all of the parts of the assembly were necessarily involved with the explosion even though the tire itself was not physically defective. He asserted: "It takes the whole assembly for this to happen."
The trial judge erred in ruling as a matter of law that Uniroyal had no duty to warn of potential dangers involved with the rim assembly unit. We find nothing in the Products Liability Act to support the trial judge's ruling. N.J.S.A. 2A:58C-1 to -7. We stress that the underlying policy justification of strict liability is the promotion of safety.
*94 In Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 451 A.2d 179 (1982), the Supreme Court held that it was incorrect for a trial judge to relieve the defendant of liability because another manufacturer was expected to place a safety device on the product. The Michalko Court stated:
The general rule is that the manufacturer of a component part of a product may be held strictly liable for injuries caused by a defect in that part if the particular part did not undergo substantial change after leaving the manufacturer's hands. [Id. at 399].
Here, even though the tire was separate from the rim assembly, the pieces were by design required to be used together. The evidence appears to support plaintiffs' contention that the tire manufactured by Uniroyal was part of the system involved with the multi-piece rim assembly unit. The issue should not have been decided as a matter of law as the court was required to consider the evidence and all legitimate inferences in plaintiffs' favor. R. 4:37-2(b); Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969). The jury should have been given the opportunity to consider whether it would accept Forney's testimony as credible and reasonable. If convinced that Uniroyal should have foreseen or actually knew of the dangers involved with the rim assemblies used with its product, the jury would then consider Uniroyal's duty to provide an adequate warning of hidden dangers to reasonably foreseeable users, unless the danger was so obvious that such users would know of it. See Height v. Kawasaki Heavy Indus., Ltd., 190 N.J. Super. 7, 461 A.2d 757 (App.Div.), certif. denied, 94 N.J. 615, 468 A.2d 244 (1983).
Plaintiffs also argue that the trial judge abused his discretion by refusing to allow plaintiffs' expert to testify about the contents of an adequate warning and how this should be conveyed. The plaintiffs assert that the judge's ruling granting Uniroyal's motion for a directed verdict was a result of the judge's belief that proximate causation issues should not be submitted to the jury without expert testimony regarding the *95 relationship between the absence of a warning on the tire and the injury suffered by plaintiff.
In Shatz v. TEC Technical Adhesives, 174 N.J. Super. 135, 415 A.2d 1188 (App.Div. 1980), a general contractor's employee bought a product called TEC 21F, which contained flammable material. A fire occurred when the product was used in a room without ventilation. Id. at 139, 415 A.2d 1188. A label warned of the dangers of the product. Id. at 140, 415 A.2d 1188. Plaintiffs attempted to offer the testimony of an expert about the alleged inadequacy of the labeling on the product. The trial court refused to permit the testimony. Id. at 146, 415 A.2d 1188.
We held that this decision constituted an abuse of discretion, as the expert was clearly qualified as an expert about the materials used in TEC 21F. We stated:
While it is true that the judge could find that he had no special expertise in the actual writing of labels, certainly his knowledge of the product was sufficient to permit him to state a conclusion as to the adequacy of the warnings. In fact, the language of both labels was not at all complicated. To know the sufficiency of warnings it is not necessary to be a writer. Reider had sufficient expertise to testify as to the adequacy of the labeling. See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 411 [161 A.2d 69] (1960); Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141-42 [72 A.2d 204] (1950). The ruling was highly prejudicial since plaintiffs were deprived of testimony going to the heart of their case. [Ibid. (emphasis added)].
We do not find it distinguishing that plaintiff's expert in Shatz had the benefit of testifying about existing warnings, while here the tire offered no warning at all. The reasoning of Shatz applies more strongly here, as Forney was not being asked to conclude whether an existing warning was adequate in terms of conveying the danger, as permitted by this court in Shatz. Ibid.
Plaintiffs' expert, Forney, testified that he had no experience with ergonomics  the study of warnings and labels and their effectiveness. However, he did submit that he had the following qualifications as a tire engineer:
(1) worked for Firestone Tire & Rubber Company for six years designing and testing tires;

*96 (2) worked for Tyrex analyzing tire failure and offering consultations;
(3) worked as the general manager for a large truck tire retread plant where he concentrated on tire failure analysis;
(4) worked for three years as the director of research and testing for a company in Virginia that performed tests on tires; and
(5) started his own consulting firm where he analyzes tires, rims, and valves and has done so for twenty-one years.
He also held other short term positions  all of which involved tire analysis.
Although Forney had no special expertise in drafting labels, he had approximately thirty-eight years of experience in the tire industry, particularly tire failure analysis. We conclude that Forney possessed the qualifications to testify generally about the purpose and contents of the warnings, which in his opinion were required to prevent accidental injury. Evid.R. 56(2); Windmere, Inc. v. International Ins. Co., 208 N.J. Super. 697, 713, 506 A.2d 834 (App.Div. 1986), aff'd, 105 N.J. 373, 522 A.2d 405 (1987).
The trial judge was concerned that plaintiffs failed to offer any testimony in the nature of ergonomics and human behavior to demonstrate that a warning would have prevented the accident. However, the expert testimony of Forney was sufficient to support a finding that a warning would have prevented the accident. Forney clearly stated this conclusion, and he explained exactly how, according to his reasoning, an adequate, if heeded, warning would have prevented plaintiff's accident. Forney testified as follows on direct examination:
Q Should a warning or an instruction have been on this tire to tell any person who is mounting or installing the tire on the truck to secure that tire to the truck with the lug nuts firmly before you add the air to it?
A Absolutely.
Q And if someone had done that, secured a tire to the lugs on the truck and then added the air to it and the assembly blew apart, would anybody be hurt by that?
A No.
Q Because 
A This happened all the time.
Q Because the wheel is not going to go anywhere since it's secured to the truck?

*97 A Exactly right, it's not going to move the truck.
Q All right. Now, this installation of that was on the dual wheels of the truck?
A Right rear outside assembly, yes, sir.
Q All right. Now, when that installation is being made, those rings that you described for us, those rings are not facing outward toward the person putting the tire on?
A No.
Q They're facing inward toward the truck?
A They're facing inward toward  just briefly, the assembly of a dual assembly is with the tube-type assembly, but the first wheel that goes on goes on backwards, we'll say, with the rings facing you and there's a space that's supplied and then the next assembly is put on the other way around so that the rings are facing the truck and they're fastened, the wedges and the nuts and studs and everything are fastened tight, then if it blows, either one of them blow together, it blows in. There's no possibility for that rim or tire to go anyplace.
Q And conversely, as was the case in this instance, the wheel was not secured to the truck?
A That's exactly, as I understand it, it wasn't secured. He was just positioning it, and when it blew, the tire ordinarily came back out.
Q The rings blew into the truck and the tire and rim base blew out at Bruno Molino?
A That's exactly what happened, yes, sir.
Q Now, in your opinion, should there have been instructions or warnings on that tire that only trained tire mechanics should do this or attempt this installation of an inflated of a multi-piece wheel?
....
[Colloquy concerning defense objection]
THE COURT: Very interesting concept. He can answer it as far as it's concerned whether there should be some kind of warning. What it should say or how it should be worded, I don't think he's qualified to answer that. Answer it yes or no.
Q Should there have been such a warning 
A Yes.
Q  about not using broken or corroded rim parts, should there have been such a warning on that tire?
A Yes, this part of the tire is manufactured long after this rim is manufactured and it's the opportunity for the tire manufacturer to do their part. The rim manufacturer's already been existence for a number of years and, certainly, this should have been done.
Q And in your opinion, was the lack of an adequate warning on the tire a proximate cause of this accident?

*98 A Oh, certainly.
Q If an adequate warning had been on this tire, is it your opinion that it would have probably prevented this accident?
A That is correct, yes, sir.
Q Have you based your opinions in this case on a reasonable degree of engineering and scientific probability?
A Yes, sir, that's usually my only opinion usually offered in that manner.
The jury here should have been permitted to determine whether the lack of warning on Uniroyal's tire was a substantial factor in bringing harm to the plaintiff. See Grassis v. Johns-Manville Corp., 248 N.J. Super. 446, 457, 591 A.2d 671 (App.Div. 1991). We do not subscribe to the view implied by the trial judge that it must be shown that the accident would not have occurred if there had been a proper warning. See Johnson v. Salem Corp., 97 N.J. 78, 95, 477 A.2d 1246 (1984). The trial court permitted Forney to testify that there should have been a warning on the tire and that the warning should have included the instruction to secure the tire to the vehicle before inflating and that only specially-trained persons should mount these tires. This evidence was sufficient to permit the jury to determine whether the failure of Uniroyal to provide a warning was a proximate cause of Molino's injury.
The trial judge apparently accepted defendant's assertion that Forney's opinion was a "net opinion." Under the net opinion rule, experts' conclusions that are unsupported by factual evidence will be inadmissible. Lanzet v. Greenberg, 126 N.J. 168, 186, 594 A.2d 1309 (1991); Buckelew v. Grossbard, 87 N.J. 512, 524, 435 A.2d 1150 (1981); see also Vuocolo v. Diamond Shamrock Chemicals Co., 240 N.J. Super. 289, 300, 573 A.2d 196 (App.Div.) (holding that expert testimony is excluded if only based on "unfounded speculation and unqualified possibilities"), certif. denied, 122 N.J. 333, 585 A.2d 349 (1990). Forney's opinion as to the need for a warning was not a "net opinion" as he stated the factual basis for his conclusion. He testified that a known danger existed, and he explained why the tire itself should contain a warning about the danger of the rim assembly. Although Forney stated that he had never done *99 any research regarding warnings or their effectiveness, he did state that those individuals involved with ergonomics often came to him to determine what the specific dangers are. Forney's extensive background in tire analysis qualified him to testify regarding the need for an adequate warning.
Forney had sufficient experience with tire and rim failures not only to render an opinion that a warning was necessary but also that, as he further testified, if placed on the tire a proper warning would have prevented the accident. Likewise, his opinion in this regard was not a net opinion because he supported his conclusion with specific reasoning which the jury could accept or reject. Of course, his opinion presupposes that the user will heed the warning. However, this element need not be the subject of expert testimony, and any such testimony might well be speculative.
When failure to warn is the basis for the cause of action in a products liability suit, plaintiff has the burden of proving that the insufficiency of the warning was a proximate cause of the accident. Malin v. Union Carbide Corp., 219 N.J. Super. 428, 439, 530 A.2d 794 (App.Div. 1987). Although plaintiff bears the burden of proof as to whether the failure to warn proximately caused the injury, generally the determination of whether the failure to warn proximately caused the accident is reserved for the jury as a factual question. Michalko, supra, 91 N.J. at 402, 451 A.2d 179.
In Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 485 A.2d 305 (1984), plaintiff was injured while inflating a tire which was connected to a Firestone rim assembly unit like the one in this case. Id. at 203, 485 A.2d 305. Plaintiff pursued a claim against Firestone for failure to warn and improper design. Ibid. The Supreme Court in Campos noted that the "plaintiff made little, if any, showing that with a proper warning the accident would not have occurred" but, nonetheless, reversed the judgment that had been entered in favor of defendant. Id. at 210-11, 485 A.2d 305. The Court *100 referred to causation as a crucial issue in the case as Campos had a prior accident which should have served as a warning, and there was evidence that no warning would have prevented the accident. Id. at 210, 485 A.2d 305. The Court then cited authority reflecting that "some courts have helped plaintiffs overcome the burden of proof by positing a rebuttable presumption that the warning would have been heeded if given." Id. at 211, 485 A.2d 305.
In Coffman v. Keene Corp., 257 N.J. Super. 279, 608 A.2d 416 (App.Div. 1992), we addressed the presumption involved in failure to warn cases in the context of an asbestos products liability case. Id. at 281, 608 A.2d 416. We first noted that a plaintiff was required to prove that the absence of a warning on the asbestos product was a proximate cause of plaintiff's injuries. Id. at 285, 608 A.2d 416. We then examined Restatement (Second) of Torts comment j (1965) which provides:
Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous. [Id. at 287, 608 A.2d 416].
We surveyed extensive case law from other jurisdictions which construed this language as providing "a rebuttable presumption in failure to warn cases assisting plaintiffs in establishing proximate cause as to the defect." Ibid. We concluded our analysis by holding that, in asbestos failure to warn cases, comment j provides ample support for the rebuttable "heeding" presumption. Id. at 289, 608 A.2d 416.
In Coffman, plaintiff presented no evidence that he would have heeded a warning if one would have been provided. Ibid. We held, nonetheless, that the plaintiff could rely on the "rebuttable presumption that had a warning been present, he would have heeded it." Id. at 289-90, 608 A.2d 416. This presumption has been applied to products liability cases not involving asbestos.
*101 In Fabian v. Minster Machine Co., Inc., 258 N.J. Super. 261, 609 A.2d 487 (App.Div. 1992), plaintiff suffered injuries after his hand was crushed in a punch press. In Fabian we held that:
Properly posted signs may be an important indication that a duty to warn was discharged. Seeley v. Cincinnati Shaper Co., Ltd., supra, 256 N.J. Super. [1] at 17, 606 A.2d 378 [(App.Div. 1992)]. However, if there is an absence of signs, defendant must come forward with some indication that the sign would not have been heeded, since there is a presumption that the missing warning, if given, would have been followed. See Campos v. Firestone Tire & Rubber Co., 98 N.J. at 211, 485 A.2d 305 (1984) (citing Professor Twerski, who noted that several courts had "helped plaintiffs overcome the burden of proof by positing a rebuttable presumption that the warning would have been heeded if given"). [Id. at 279, 609 A.2d 487].
R. 4:37-2(b) governs motions for an involuntary dismissal during trial. The standard set forth in this rule provides: "Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." Based on this standard, the trial court erred in granting defendant's motion.
Molino had no ability to testify about the events leading to the accident or whether he would have heeded a warning had one been provided. However, he should have received the benefit of the "heeding" presumption. Plaintiffs' expert testified that the tire should have contained a warning and that such a warning would have prevented the type of accident suffered by plaintiff. When considered in light of the presumption that a warning will be heeded, the factual issue as to proximate cause was sufficiently established and should have been submitted to the jury. See Butler v. PPG Industries, Inc., 201 N.J. Super. 558, 562, 493 A.2d 619 (App.Div.), certif. denied, 102 N.J. 298, 508 A.2d 186 (1985); see also Crispin v. Volkswagenwerk AG, 248 N.J. Super. 540, 562-63, 591 A.2d 966 (App.Div.), certif. denied, 126 N.J. 385, 599 A.2d 162 (1991).
Plaintiffs further urge that the court erred in granting defendant's motion in limine to exclude evidence of any warnings placed on its tires after 1973, the date the tire in *102 question was manufactured, but before 1987, the date of the accident. Plaintiffs maintain that the warning is relevant because New Jersey law mandates that a manufacturer has a continuing duty to warn even after the product has been distributed. In view of the anticipated retrial, we choose to discuss the issue.
Evid.R. 51 provides:
When after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.
The obvious policy underlying this rule is that persons should not be discouraged from taking remedial steps to make a potentially dangerous situation more safe. The rule applies to strict liability as well as to negligence cases. Price v. Buckingham Manufacturing Co., Inc., 110 N.J. Super. 462, 266 A.2d 140 (App.Div. 1970). In applying Evid.R. 51 to products liability cases, it is apparent that the event to be focused on is the date of the accident, not when the product was originally manufactured or distributed. Lavin v. Fauci, 170 N.J. Super. 403, 409, 406 A.2d 978 (App.Div. 1979). Evidence of measures taken after the manufacture but before the accident have been held admissible under this rule. Ibid.
In Shatz, supra, we observed:
Evidence of repairs made after an accident, though perhaps relevant as to a defendant's breach of duty, is excluded so that a person after an accident is not discouraged from making repairs by the anticipation of being confronted at trial with an argument that his own remedial conduct shows the inadequacy of prior conditions.... But we perceive of no social policy furthered by allowing a defendant to keep from the jury evidence of remedial conduct undertaken before an accident. [Shatz, supra, 174 N.J. Super. at 141, 415 A.2d 1188 (emphasis added)].
We do perceive, however, in the products liability arena that a manufacturer might to some extent be deterred from placing a warning on a product if that remedial action may be used to bolster already existing causes of action based on claims that the product was defective or dangerous. It must be recognized that large manufacturers are continually confronted with any *103 number of products liability claims. On the other hand, it is clear that manufacturers have a continuing duty to warn of a product's dangers even after it has been distributed. Lally v. Printing Machinery Sales, 240 N.J. Super. 181, 185, 572 A.2d 1187 (App.Div. 1990). We also expect that it makes sound business sense for a manufacturer not to delay or avoid giving warnings of known dangers at the earliest possible opportunity in order to prevent avoidable accidents and the resulting claims.
"As a general rule, admission or exclusion of proffered evidence is within the discretion of the trial judge whose ruling is not disturbed unless there is a clear abuse of discretion." Dinter v. Sears, Roebuck & Co., 252 N.J. Super. 84, 92, 599 A.2d 528 (App.Div. 1991). A trial court has the authority to exclude otherwise admissible evidence if the prejudicial effect outweighs the probative value. Evid.R. 4. Defense counsel at the argument on the motion in limine admitted that defendant and other tire manufacturers actually began placing warnings on these types of tires around 1984. On remand, the trial judge must weigh the probative value of this evidence against its possible prejudice and ability to confuse the jury.
The relevance of a warning placed on a product ten to eleven years after its manufacture is doubtful in the absence of a detailed chronology of the accident history of the product, except with regard to the continuing nature of the duty to warn. We expect that it would not be relevant to the defendant's knowledge and awareness of the danger in 1973. It may, however, be evidential of the time when defendant became sufficiently aware of the danger to necessitate an attempt to convey a warning to earlier purchasers and continuing users of its product which did not contain a warning. The appropriate setting to explore this issue is at an Evid.R. 8 hearing where all of the facts can be elicited, including any relevant testimony on the feasibility of attempting to reach users of a product purchased so many years before.
*104 We reverse and remand for a new trial as plaintiffs' cause of action was improperly dismissed for the reasons expressed in this opinion.