286 N.J. Super. 575 (1996)
670 A.2d 44
DAVID FACENDO, PLAINTIFF-APPELLANT,
v.
S.M.S. CONCAST, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1995.
Decided January 19, 1996.
*578 Before Judges SHEBELL, WALLACE and NEWMAN.
Clark W. Convery argued the cause for appellant (Convery, Convery & Shihar, attorneys; Mr. Convery, on the brief).
Harold I. Braff argued the cause for respondent (Braff, Harris & Sukoneck, attorneys; Stephen Wellinghorst and Marc Le Mieux, on the brief; Mr. Braff, of counsel).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Plaintiff, David Facendo, filed an action against S.M.S. Concast Inc. ("Concast"), seeking damages for injuries he sustained on September 28, 1989, while employed by Raritan Steel Company ("Raritan").[1] The case was tried to a jury, commencing on November 14, 1994. During trial, the judge requested proposed jury charges from both counsel. Plaintiff requested the court to charge the heeding presumption based on Molino v. B.F. Goodrich Co., 261 N.J. Super. 85, 617 A.2d 1235 (App.Div. 1992), certif. denied, 134 N.J. 482, 634 A.2d 528 (1993), and Coffman v. Keene Corp., 133 N.J. 581, 628 A.2d 710 (1993). However, the judge ruled that the heeding presumption was not applicable, as it could not be presumed that plaintiff would have quit his job, or bid for a *579 transfer, after believing that Concast's product was allegedly defective.
On December 2, 1994, the jury found that Concast's machine was defective because of a failure to warn. The jury also found that the negligence of Raritan was not an intervening cause which destroyed the causal connection between the effect of Concast's failure to warn and plaintiff's injuries. However, the jury found that Concast's failure to warn was not a proximate cause of plaintiff's injuries. Accordingly, the judge entered judgment in favor of Concast.
Plaintiff filed a motion to set aside the verdict, to enter judgment in favor of plaintiff on the issue of liability, and to grant a trial on the issue of damages. In the alternative, plaintiff asked for a new trial on all issues. On January 6, 1995, an order was entered denying plaintiff's motion.
Ferrco was engaged by Raritan to prepare specifications for a five strand continuous billet casting machine for Raritan. The specifications set forth the minimum requirements which the bidder should follow and required the successful bidder to provide eight (8) copies of the installation and operation and maintenance manuals prior to shipment of the casting machine equipment. Concast was awarded the contract. Raritan used the machine to mold billets. In the process, liquid steel enters a thirty-two (32) inch long mold. Cooling of the steel begins to form a skin 1/3 to 1/2 inch thick around the billet. The billet enters the spray chamber where nozzles spray high velocity water onto the billet. This produces a shell while the inside is totally liquid steel.
The operating manual prepared by Concast stated that: "Liquid steel falling on even a small amount of water can cause explosions. All areas where steel spillage is likely must be kept dry." Concast's manual was located in the office of Raritan's Manager of Continuous Casting, who was ultimately responsible for the training of new and promoted employees. According to the manager, this manual was used primarily as a reference guide for operation, maintenance and supervision. The manager supervised the casting *580 crew which included, among others, the mold operators, torch operators and billet handlers. He testified that Raritan had a "hands-on" training program with regard to the operation of the casting machine, because "[i]t's impossible for me to tell a new employee or my supervisor, or another operator to explain to a new employee, or person coming into our shop what could all happen."
The manager explained to the jury the process of molding billets and then stated that when liquid steel mixes with water you get a slight reaction called a breakout. He noted that some people call it an explosion, but basically it is a reaction in which a sudden release of steam creates hydrogen and makes a loud noise, which produces green and orange flames. He explained that when new employees come onto the caster they go through a progressive learning process and if they are leery or scared they can bid out of the casting department. No manuals are given to any employee for training as it is all "hands-on."
Breakouts occur inside the spray chamber, but can be felt in the casting floor area. However, there are also alarms that will alert the mold operator that a breakout has occurred. The manager stated that it would be impossible for an employee at Raritan not to be aware of breakouts and the explosions that normally follow, as there are approximately twenty (20) to thirty (30) breakouts a month. The explosions vary in intensity. Sometimes they shake the floor and can be heard by employees outside of the casting area. He testified that explosions are a part of the regular operation of the facility.
Raritan's personnel director testified on behalf of plaintiff. He stated that Raritan employs about 600 full time employees in two major divisions: steel production and log production. The casting department, where plaintiff was employed, is one of the twelve departments within the steel production division.
Plaintiff was employed by Raritan for over three years. He was first employed on July 5, 1985, as a temporary summer employee, in the billet yard to grind and line billets. He received a Guide to *581 Temporary Employment when he was hired. This handbook contained no statement on any common plant hazards, nor did it state that contact between liquid steel and even a small amount of water would cause an explosion. He was not told about any prior explosions.
Plaintiff returned as a temporary employee for the summer of 1986. He received the same Guide to Temporary Employment as before and read it from cover to cover. He worked inside the steel mill and helped the billet handler. He was trained by a billet handler.
Plaintiff became a full time employee as a billet handler on September 8, 1986. He received an employee's handbook in November 1986, and read it. The handbook did not list any common plant hazards, nor comment on potential explosions. In 1988, plaintiff received a Safety and Health Manual and read the entire manual. This manual listed common plant hazards, but did not mention explosions from liquid steel mixing with water. All of the manuals were prepared by Raritan, but none made any reference to explosions occurring on the caster floor. On April 17, 1988, plaintiff went from a billet handler to a second torch operator. He was trained by a second torch operator, but stated that he was not told about any danger of explosion.
On July 17, 1988, plaintiff went from second torch operator to first torch operator. On May 6, 1989, he began training as a second mold operator, while still a first torch operator. Plaintiff testified that he was not trained by any single person, but by the first mold operator and other second mold operators. He also stated that the casting supervisor did not give him any outside training. His training consisted of "watch[ing] [mold operators] as they walk around, the way they maneuver all their tools and stuff up there, and just watch the way they are." On August 9, 1989, plaintiff moved from first torch operator to second mold operator.
Plaintiff testified that he never saw a copy of the operating manual prepared by Concast. The manual was not kept in the *582 office of the Personnel Director. In fact, the Personnel Director never saw the manual prior to the trial, and he had been at Raritan for ten years. Plaintiff also stated that he was never told that liquid steel falling on even a small amount of water could cause an explosion.
Plaintiff was second mold operator on September 28, 1989, the day of the accident. Plaintiff explained that at about 1:56 a.m. he heard the alarm indicating there was a breakout. He pulled the launder, a small trough just above the mold to catch spillage, to divert the stream of liquid steel. The launder had already been used and had some material in it. While he was attempting to plug the flow of molten steel, there was an explosion. Plaintiff was thrown to the back wall by the explosion, where he was seen with oil splattered on his face mask. Plaintiff was transported to the hospital by ambulance. He came under the care of numerous doctors. He received his last treatment for injuries about two (2) years after the accident in September 1991.
The total time that elapsed from the alarm to the explosion was fifteen to twenty seconds. Prior to the light and the alarm, plaintiff did not receive any indication that there was a problem on the caster floor or the spray chamber. He was wearing a hard hat, glasses, face shield, fire resistant jacket and pants, fire resistant legging, safety shoes and ear plugs.
Plaintiff testified that he was told that a breakout was liquid steel breaking out of a formed billet that was going through the spray chamber. He stated that breakouts happened on a regular basis, but he had never heard any explosions associated with breakouts. He stated that no one ever used the word explosion or described the type of occurrence that happened to him. He also stated that he never heard a noise like the one heard during this incident. Plaintiff stated that when the steel breaks out and hits the water you could get steam, a crackling sound, a popping sound or sometimes no noise. Plaintiff also stated that he did not consider a loud noise an explosion, unless it moved him. Plaintiff stated he never heard any noise associated with a breakout when *583 he was a first torch operator. However, he did observe sparks, "like someone cutting steel ...," which occurred before a breakout. He testified that he never before felt any vibrations from the breakouts as a first torch operator or a second mold operator.
Plaintiff asserted that if he had been told there were explosions on the caster floor that he would not have taken the job. He would have signed up for another job and if one was not available he would have quit. Raritan had a procedure for posting jobs which permitted any non-exempt employee the opportunity to be considered for an opening prior to hiring outside individuals. Available jobs are posted on one of twenty (20) bulletin boards. Employees can sign up for any position posted.
The deposition of a design engineer at Concast was read at trial. He defined a breakout, and stated that breakouts are a common occurrence and that sometimes there were explosions. Plaintiff's expert testified that he would not define a breakout as an explosion, although breakouts have always been associated with a potential explosive reaction. He noted that the operator's manual does not set forth a safety, training or caution section. He did not believe that the explosion hazard could be designed out of the casting machine. This created a need for a warning sign on the machine's control. Thus, he concluded that Concast did not adequately warn plaintiff that there was a risk of explosion.
Concast's expert in the field of warnings and safety as it relates to machine design, opined that the warnings in the operator's manual were adequate. He stated that according to the codes and standards there was no need for any warning signs, especially since breakouts commonly occur in the operation of the plant and are obvious.
Plaintiff contends that the judge's refusal to charge the jury on the heeding presumption was error. Defendant counters that the judge's ruling was proper, but even if the heeding presumption were to apply, it would not be proper to charge it to the jury.
*584 In this case, the failure to warn of the danger of explosion that could cause injury was found by the jury to constitute a product defect. See Coffman, supra, 133 N.J. at 593-94, 628 A.2d 710. The Products Liability Act, N.J.S.A. 2A:58C-1 to 11, is controlling.
N.J.S.A. 2A:58C-2 provides in pertinent part:
A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: ... b. failed to contain adequate warnings or instructions ...
N.J.S.A. 2A:58C-4 defines an adequate warning as:
An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used ...
"When failure to warn is the basis for the cause of action in a products liability suit, plaintiff has the burden of proving that the insufficiency of the warning was a proximate cause of the accident." Molino, supra, 261 N.J. Super. at 99, 617 A.2d 1235; see also Coffman, supra, 133 N.J. at 594, 628 A.2d 710. The determination of whether an insufficient warning was the proximate cause is generally reserved for the jury as a factual question. Molino, supra, 261 N.J. Super. at 99, 617 A.2d 1235.
The heeding presumption is "a presumption that plaintiff would have `heeded' or followed a warning had defendant given one." Coffman, supra, 133 N.J. at 595, 628 A.2d 710. The "heeding presumption" may be appropriate in cases where the product is found to be defective because of an inadequate warning. Graves v. Church & Dwight Co., Inc., 267 N.J. Super. 445, 457, 631 A.2d 1248 (App.Div.), certif. denied 134 N.J. 566, 636 A.2d 523 (1993). "[T]he heeding presumption serves to eliminate conjecture about whether a given plaintiff would have heeded a hypothetical warning, and discourages determinations of causation that are based on extraneous, speculative considerations and unreliable or self-serving evidence." Theer v. Philip Carey Co., 133 N.J. 610, 619, 628 A.2d 724 (1993). "The effect of such a presumption is to require defendant to come forward with evidence sufficient to *585 rebut the presumption, or risk a directed finding against it as to the presumed facts." Graves, supra, 267 N.J. Super. at 460, 631 A.2d 1248 (citing In re Weeks' Estate, 29 N.J. Super. 533, 537-38, 103 A.2d 43 (App.Div. 1954)). In other words, if this presumption is not rebutted by the defense, "the failure to warn is presumed to be a proximate cause of the plaintiff's injuries." Theer, supra, 133 N.J. at 614, 628 A.2d 724.
In a failure to warn case, "the plaintiff should be afforded the use of the presumption that he or she would have followed an adequate warning had one been provided, and that the defendant in order to rebut that presumption must produce evidence that such a warning would not have been heeded." Coffman, supra, 133 N.J. at 603, 628 A.2d 710. If the heeding presumption is not rebutted, then the court "need not submit the issue of proximate cause from the absence of a warning to the jury but may determine as a matter of law that the warning would have been heeded." Id. at 595, 628 A.2d 710. "The burden of coming forward with evidence to rebut the presumption is on the defendant, but the burden of proof never shifts from the plaintiff." Graves, supra, 267 N.J. Super. at 460, 631 A.2d 1248 (citing Ford Motor Co. v. Township of Edison, 127 N.J. 290, 314-15, 604 A.2d 580 (1992)).
The heeding presumption has application to both employers and employees. Theer, supra, 133 N.J. at 621, 628 A.2d 724.
Hence, in order to overcome the heeding presumption as applied in a failure-to-warn case involving a product used in the workplace the manufacturer must prove that had an adequate warning been provided, the plaintiff-employee with meaningful choice, would not have heeded the warning. Alternatively, the manufacturer must show that had an adequate warning been provided, the employer itself would not have heeded the warning by taking reasonable precautions for the safety of its employees and would not have allowed its employees to take measures to avoid or minimize the harm.
[Ibid. (quoting Coffman, supra, 133 N.J. at 609, 628 A.2d 710).]
In this case, the trial judge, after extensive colloquy with both parties, ruled that the heeding presumption charge was not applicable. He reasoned that it could not be presumed that plaintiff *586 would have quit his job, or bid for a transfer if warned that Concast's machine produced explosions capable of causing injury or harm. Accordingly, the court stated that there should be no presumption, and that the jury would have to determine the issue without its benefit. The court noted in its decision that Raritan was generally a dangerous place to work.
Although it is clear that the casting area at Raritan was a dangerous place to work, the issue is whether plaintiff was made aware of the danger of explosion capable of causing injury, and if not so informed, whether he would have remained so exposed if informed. Plaintiff testified that he was told about breakouts, that they occurred on a regular basis, and that he observed sparks and heard crackling or popping sounds when breakouts occurred. However, he maintained that he was never warned about explosions and never felt any vibrations in connection with breakouts.
Raritan provided a procedure whereby a worker could transfer to another department if he did not feel safe. Thus, the jury could find that plaintiff had a meaningful choice had he been adequately warned of the danger of explosion. The trial judge, therefore, properly submitted the issue of proximate cause due to the absence of a warning to the jury, as there was a genuine factual dispute which required jury resolution with regard to plaintiff's knowledge of the explosive danger of liquid steel contacting water. See Graves, supra, 267 N.J. Super. at 458, 631 A.2d 1248.
However, the trial judge erroneously denied plaintiff's request to charge the jury on the natural inferences giving rise to the heeding presumption. "Under New Jersey law, there is a general prohibition against calling presumptions to the attention of a jury." Graves, supra, 267 N.J. Super. at 461, 631 A.2d 1248; see Jurman v. Samuel Braen, Inc., 47 N.J. 586, 596-99, 222 A.2d 78 (1966). Nonetheless, in failure to warn cases unless the jury is instructed in accordance with the underlying basis for the heeding presumption, a plaintiff will be unable to gain the full benefit of the doctrine.
*587 Under the heeding presumption, absent contrary evidence, there arose a presumption that plaintiff and Raritan would have followed Concast's warnings, had the warnings been properly given. Coffman, supra, 133 N.J. at 603, 628 A.2d 710. Defendant's evidence relating to the knowledge of the danger of explosion at Raritan was sufficient to refute the presumption, but failed to abrogate it, so that the issue could not be determined as a matter of law. Id. at 595, 628 A.2d 710; see Calderon v. Machinenfabriek, 285 N.J. Super. 623, 632, 667 A.2d 1111 (App.Div. 1995) (evidence so clearly rebutted presumption that issue need not be given to jury).
This did not remove from the jury its ability to consider the presumed fact. Ibid. Even where the presumption is rebutted, N.J.R.E. 301 requires that the jury still be permitted to decide the issue.
If evidence is introduced tending to disprove the presumed fact, the issue shall be submitted to the trier of fact for determination unless the evidence is such that reasonable persons would not differ as to the existence or nonexistence of the presumed fact. If no evidence tending to disprove the presumed fact is presented, the presumed fact shall be deemed established if the basic fact is found or otherwise established. The burden of persuasion as to the proof or disproof of the presumed fact does not shift to the party against whom the presumption is directed unless otherwise required by law. Nothing in this rule shall preclude the judge from commenting on inferences that may be drawn from the evidence.

[Emphasis added.]
The Supreme Court Committee comment further explains:
The principle is that a valid presumption can be used to establish a prima facie case, but the presumption normally disappears in the face of conflicting evidence. Nevertheless, any logical inference which can be drawn from the basic fact remains. Thus, the rule provides that the trial judge is not precluded from commenting on inferences that may be drawn from the evidence, even when conflicting evidence is presented. Note also that under Rule 301 the burden of persuasion is not shifted to a party against whom the presumption operates.
[N.J.R.E. 301, comment.]
Here, we are satisfied that a jury of reasonable persons could differ as to whether the providing, by Concast, of an adequate warning of the danger of explosion and its consequences would have caused plaintiff to remove himself from the risk of such harm. Moreover, we are convinced that a proper and complete *588 jury charge as to available inferences based on the heeding presumption was required in these circumstances. See Coffman, supra, 133 N.J. at 607-09, 628 A.2d 710.
A proper jury charge should "`outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them....'" Navarro v. George Koch & Sons, Inc., 211 N.J. Super. 558, 570, 512 A.2d 507 (App.Div.), certif. denied, 107 N.J. 48, 526 A.2d 138 (1986) (quoting Jurman v. Samuel Braen, Inc., supra, 47 N.J. at 591-92, 222 A.2d 78).
"In products liability cases, the judge must be particularly careful to tailor the instructions to the factual situation in order to assist the jury in performing its function." Id. at 571, 222 A.2d 78. "A jury is entitled to an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case." Id. at 574, 222 A.2d 78.
We recognize, as did the trial judge, that a unique circumstance is presented when the required warning gives notice, not of a danger that is avoidable, but of one that is inherent and unavoidable except by refraining from use of the product. Nonetheless, we hold that in the circumstances presented here, plaintiff is entitled to the full benefit of the heeding presumption, including a jury charge based thereon.
In this case, a proper and adequate jury charge should advise the jury, without reference to presumptions, that it may infer, for the purposes of its deliberations, that if a proper warning of the danger of the use of the product were provided, it would be heeded. In this regard, the jury should consider the evidence that plaintiff was afforded a meaningful choice with respect to avoiding the risk of injury. Id. at 605, 222 A.2d 78. The instruction must, of course, caution the jury that in the event it finds from the evidence that plaintiff knew of the extent of the danger and failed *589 to take reasonable measures to safeguard himself in the face of the known danger, that the inference would not be available. Id. at 607-08, 222 A.2d 78.
Reversed and remanded as to all issues.
NOTES
[1] On January 8, 1993, plaintiff amended his complaint to include Ferrco Engineering, Ltd. ("Ferrco") as an additional defendant. However, Ferrco has not been located.