212 N.J. Super. 155 (1986)
514 A.2d 528
STEPHEN VALLILLO, PLAINTIFF-RESPONDENT,
v.
MUSKIN CORPORATION, S.K. PLASTICS CORP., DAVIS SWIM POOL CENTER AND EDWARD VALLILLO AND DONNA VALLILLO, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1986.
Decided July 16, 1986.
*156 Before Judges DREIER, BILDER and GRUCCIO.
William T. Connell argued the cause for appellant Muskin Corporation (Dwyer, Connell & Lisbona, attorneys, William T. Connell, on the brief).
John S. Fetten argued the cause for appellant S.K. Plastics, Inc. (Robert C. Pollock, Jr., attorney, Glenn A. Montgomery, on the brief).
Donald S. Goldman argued the cause for appellant Davis Swim Pool Center (Harkavy, Goldman, Goldman & Caprio, attorneys, Martin S. Goldman, on the brief).
George J. Duffy argued the cause for respondent (Baker, Garber, Duffy & Baker, attorneys, George J. Duffy, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendants Muskin Corporation (Muskin), S.K. Plastic, Inc. (S.K.), and Davis Swim Pool Center (Davis) have appealed, by leave granted, from the denial of their summary judgment motions in the Law Division.
*157 Muskin was the manufacturer of an above-the-ground pool frame originally purchased through Davis[1]. Codefendants Edward and Donna Vallillo, the owners of the pool, installed a replacement liner, manufactured by defendant S.K., when they reconstructed the frame in their yard. When they constructed a new wooden deck, the Vallillos covered a warning sign placed on the frame by Muskin containing the words "DANGER DO NOT DIVE." Muskin's original liner, which also contained multiple printings of the same warning, was discarded when the Vallillos installed the S.K. liner bearing no such warnings.
Plaintiff was invited to a swim party at his cousin's home and in the course of a dive into the pool was severely injured. He escaped permanent paralysis only through the skill of his treating physicians. At this stage in the litigation we do not and should not resolve the various factual questions in this case concerning the conduct of plaintiff relating to his ingestion of alcohol, attempt at a "flip" dive, or the like, all the subject of variant deposition testimony. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954). We accept as true, however, undisputed facts, primarily gleaned from plaintiff's deposition. Ferdinand v. Agricultural Ins. Co. of Watertown, 22 N.J. 482, 494-498 (1956); Judson, 17 N.J. at 75.
The depositions reveal that plaintiff was an experienced swimmer for approximately 23 years before the accident, having learned to swim when he was six. His family had a similar pool as he was growing up and he also had engaged in swimming and diving at the local YMCA, health spas, and community pools. He considered himself a person familiar with above-the-ground swimming pools as well as with diving into such pools. He had raced with friends and knew how to do a racing or shallow dive. Prior to the accident he had jumped into the pool and observed others there. He first stood in the pool and knew the water *158 was approximately four and one-half feet deep; standing 6'4", plaintiff noted that the water came approximately four inches above his navel. It was clear from plaintiff's repeated deposition testimony that with full knowledge of the depth of the water, familiarity with the pool, and cognizant of his own swimming and diving abilities, he attempted to perform a shallow dive to avoid the risk of hitting the bottom.
Ordinarily the resolution of an inadequate-warning products liability claim involves first the determination of the defect in a product sold or marketed by defendants, i.e. the evaluation of the adequacy of the warning, then an assessment of the plaintiff's conduct, and finally a determination of how each may have proximately caused the accident. These factors, and specifically the determination of how each factor may have contributed to the happening of an accident, are matters usually left for proof at trial. Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 209 (1984); Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 402 (1982). But in some instances the summary judgment procedure, designed to achieve an inexpensive and expeditious termination of proceedings where there is an insufficient legal basis for recovery, should be utilized. We recognize the financial burden both to plaintiffs and defendants in litigating products liability matters. Both trial and appellate judges should welcome early efforts to review proceedings to determine their legal viability to the end that spurious claims and defenses need not be the subject of extended litigation and its attendant expenditure of resources. Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J. at 74. Cf. Maressa v. New Jersey Monthly, 89 N.J. 176, 196-97 (1982), cert. den. 459 U.S. 907, 103 S.Ct. 211, 74 L.Ed.2d 169 (1982).
Plaintiff contends that defendants' warnings should have been embossed on the pool lip or otherwise placed around the pool, and that S.K.'s replacement liner should have had at least the type of warnings displayed on Muskin's original liner. Plaintiff further states that the warning should have been more *159 explicit, stating not merely: "Danger, do not dive," but: "Danger, shallow water dives cripple," accompanied by a pictorial representation of a person diving with a superimposed red "X".[2]
Warnings serve multiple functions. In this case plaintiff asserts that the allegedly necessary but missing warning would have called attention to an unanticipated danger or one that may temporarily have been forgotten even by a knowledgeable user of the product. Cf. Zentz v. Toop, 92 N.J. Super. 105, 114-15 (App.Div. 1966), aff'd o.b. 50 N.J. 250 (1967). There is no question that warnings necessary to make a product reasonably safe, suitable and fit for its intended use must be placed on the product. Campos v. Firestone Tire & Rubber Co., supra, 98 N.J. at 207-208. "A manufacturer is not automatically relieved of his duty to warn merely because the danger is patent." Id. at 207.
However, when we focus not upon the acknowledged duty of the manufacturer to warn the class of users, but rather upon the effect of the warning, or lack thereof, upon a particular allegedly knowledgeable user, our analysis must shift to an assessment of the breach of that duty as a proximate cause of the accident. Campos v. Firestone Tire & Rubber Co., 192 N.J. Super. 251, 266-268 (App.Div. 1983), (dissenting opinion), rev'd 98 N.J. 198 (1984). Therefore, in this case, assuming arguendo that there was a duty to warn more effectively that it was dangerous to dive into the shallow pool, we must determine whether the lack of such warnings could reasonably have been found a proximate cause of this accident. Clearly, if the user of a product knows at the moment of use the very danger of which the warning would have apprised him, but *160 chooses to disregard that conscious knowledge, then the presence or absence of the warning is irrelevant. As was noted in Mc Grath v. American Cyanamid Co., 41 N.J. 272, 275 (1963), there is "no need to warn one of a danger he already knows." The absence of the warning cannot then be a proximate cause of the accident. The plaintiff has, in the classic sense, assumed the risk. See Prosser & Keeton, Torts (5th ed.) § 68 p. 49 (1984); Restatement, Torts 2d, § 466, Comments c and d.
Conversely, if as in Campos the danger had been even momentarily forgotten by the user and there is some reasonable possibility that the warning would have triggered his recollection of the danger and thus changed his conduct, then the absence of the warning is a proper ingredient in a proximate cause analysis. In Campos, plaintiff had been trained to believe that a separation of the tire rim within the cage could cause an explosion which could endanger the lives of those present. Although he had been injured in a similar accident years before, and knew generally of the dangers, he reached instinctively into the cage to disconnect the air chuck, momentarily unaware that the cage would have provided protection. A jury could have determined that the lack of a proper warning to rely on the cage's protection and to keep his arm out of the cage was at least a factor materially contributing to the happening of the accident.
Whether the warning prods a momentarily-inattentive user or guards against instinctive actions, the lack of such an effective warning could be found to be a proximate cause of accidents in most situations. The case before us, however, is not one of these situations. From plaintiff's own testimony, before diving, while diving, and after he hit the water, he was conscious of some danger inherent upon hitting the bottom. With full knowledge that the dive could be dangerous, he attempted, albeit unsuccessfully, to execute a shallow dive and thus avoid the danger.
*161 The limited deposition testimony with which we have been provided does not show whether plaintiff knew that the dive could have caused any serious injury. He well might have thought that the danger was merely that of a bruised hand or forehead or the like. It is apparent that if one engages in conduct, willing to assume the risk of a slight injury, such willingness may not in all circumstances be extrapolated to an assumption of unknown and unanticipatable grave risks. See Restatement, Torts 2d, § 466, Comment c:
[t]he plaintiff must have knowledge of such facts that, as a reasonable man, he should realize the danger involved....
The "quantum of danger" includes
... both the probability of harm and its gravity which the plaintiff realizes or has reason to realize will be involved in the condition created by the defendant.... [Ibid].
Alternatively, a plaintiff may know that his conduct has the potential for causing significant injury. In such a case the warning would give him no more information than he already possessed at the very moment he engaged in the disputed conduct.[3] If such a finding were made here concerning plaintiff's subjective knowledge and conduct, and irrespective of any breach of defendant's duty to warn of the danger of diving into this shallow pool, the lack of such explicit warning could not *162 have been a factor substantially contributing to the happening of this accident.
Here, even though such a finding of subjective knowledge could not have been made from this summary judgment record, the court should have found that a risk of serious harm was attendant upon the diving activity as a matter of common knowledge at least to experienced swimmers. Cf. Hollinger v. Shoppers Paradise, 134 N.J. Super. 328, 334 (Law Div. 1975), aff'd 142 N.J. Super. 356 (App.Div. 1976) (danger of illness from eating pork); Donch v. Delta Inspection Services, Inc., 165 N.J. Super. 567, 572 (Law Div. 1979) (working underwater for prolonged periods is dangerous). Although the trial judge was not requested to take judicial notice that an experienced swimmer would realize the danger of shallow water diving, Evid.R. 9(1) requires such notice "without request by a party."[4]
A person experienced in the use of the product, who has indicated by his actions that he has recognized that his conduct runs the risk of a particular danger, will not be permitted to absolve himself from responsibility for an objectively anticipatable injury resulting therefrom. Striking one's head on the pool bottom is an obvious result of diving into a shallow pool. Defendants' failure to warn that spinal injuries could result *163 from such a head injury cannot be said to be a proximate cause of plaintiff's diving in conscious disregard of his own safety.[5]
Since we have determined that a jury could not reasonably have found any lack of warnings to have been a proximate cause of plaintiff's accident, we are constrained to reverse the trial court's denial of defendants' motions for summary judgment and remand the matter to the trial judge to enter dismissals against Muskin, S.K. and Davis.[6]
NOTES
[1] The pool, sold to another consumer several years ago, had been purchased as a used item by plaintiff's cousins, who substantially renovated it, retaining only the original frame.
[2] In the appropriate case the marketing detraction of such a label might be a valid consideration for a jury as part of a risk/utility equation. See Cepeda v. Cumberland Engineering Co. Inc., 76 N.J. 152, 174 (1978), factor (6), "the existence of suitable warnings ..." (Emphasis added).
[3] At oral argument plaintiff contended that the precise nature of the injury was a material part of the recognition of the danger and asserted that there was no showing that plaintiff knew that he possibly could have been crippled. Thus, he contends that only a warning of the full extent of the possible injury would be adequate. In some settings where no serious injury of any kind is apparent, such additional explicit warnings might be appropriate; but we cannot overlook the wide variety of injuries to be listed if warnings were legally required to contain a list of all possible injuries (or even the severest injury that could be reasonably expected, usually death). Warning labels cannot be effective if they take on the characteristics of drug package inserts. It is generally sufficient if the warning gives general notice of a danger and the conduct to be avoided. For example, signs giving a warning of high voltage electricity that pictorially indicate not to touch wires or equipment, utilizing a lightning symbol, or a poison label with a skull and cross-bones, or even road signs indicating danger areas need not indicate the particular permanent physical harm that might befall a person who disregards the warning.
[4] Although we determined in Height v. Kawasaki Heavy Industries, Ltd., 190 N.J. Super. 7, 10 (App.Div. 1983), certif. den. 94 N.J. 615 (1983), that a "manufacturer or distributor [is] exempted from strict tort liability for failure to provide a warning of a danger within common knowledge and understanding," citing 2 Restatement, Torts 2d, § 402A, Comment (j) at 353 (1965) and 2 Hursh and Bailey, American Law of Products Liability, (2 ed. 1974), §§ 8.14 and 8.15, this position was specifically rejected in Campos v. Firestone Tire & Rubber Co., supra, 98 N.J. at 207. Our decision today is not to say that New Jersey adopts the "obvious danger rule." Under Campos we clearly do not. Id. at 207. Also, since the danger here is not "basic to the functioning or use of the product," it does not fall within the exception, repeatedly noted throughout our case law, that one need not be warned of basic and obvious dangers such as that a match will burn. Id. at 208.
[5] This reasoning process must also be distinguished from foreseeability analysis, best exemplified in Avedisian v. Admiral Realty Corp., 63 N.J. Super. 129, 133-134 (App.Div. 1960), employed to determine whether a party may be held responsible for an unforeseen but anticipatable consequence of his actions. The issue here is not whether any resultant injury could be plaintiff's responsibility, but rather whether this plaintiff should be deemed to know of this potential but obvious harm when he voluntarily dove attempting to avoid hitting the bottom of the pool.
[6] Given our conclusions as to the proximate cause issue, we need not here reach the additional points implicated by these facts, namely, whether the single warning label affixed to the pool frame was sufficient in light of promotional literature that showed pool decks constructed above a substantial portion of the circumference. Nor must we pass upon Muskin's claim that the use of a replacement liner containing no warnings similarly diminished its responsibility.