713 A.2d 1079 (1998)
314 N.J. Super. 54
Timothy Patrick SHARPE, Plaintiff-Appellant,
v.
BESTOP, INC. and Sears Roebuck and Company, Defendants-Respondents,
and Chrysler Corporation, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1998.
Decided July 15, 1998.
*1082 John B. Collins, Denville, for plaintiff-appellant (Bongiovanni, Collins & Warden, attorneys; Mr. Collins, on the brief).
Robert G. Hampson, Somerville, for defendant-respondent (Mr. Hampson, on the brief).
Before Judges DREIER, KEEFE and WECKER. *1080
*1081 The opinion of the court was delivered by KEEFE, J.A.D.
This "second collision" product liability case requires us to examine the use of the "heeding presumption" in the context of a failure to warn case.

I.
In November of 1987, plaintiff purchased a used 1985 Jeep CJ7, manufactured by Chrysler Corporation. As purchased, the Jeep came with a standard hard, fiberglass top and removable steel doors. In the summer of 1988, plaintiff purchased a "Fastback" soft convertible top and doors manufactured by Bestop, Inc. and sold by Sears Roebuck and Company. Plaintiff installed the soft top and doors on his Jeep according to the manufacturer's instructions.
In the early morning of August 18, 1988, plaintiff and a friend, Ray Alvarez, were returning to plaintiff's parents' home in Hazlet, travelling northbound on the Garden State Parkway. Plaintiff was driving, and Alvarez was in the passenger seat. Neither plaintiff nor Alvarez had their seat belts on. Plaintiff apparently fell asleep behind the wheel of the Jeep and was seriously injured when he was ejected from the vehicle upon impact with a guardrail.
Plaintiff thereafter brought an action against defendants Bestop, Sears, and Chrysler. Plaintiff's complaint alleged that defendants Bestop and Sears defectively designed the soft convertible top and doors and failed to provide adequate warnings for the soft top's safe use. As to defendant Chrysler, plaintiff alleged that the Jeep was defectively designed. Although Chrysler provided a general warning that seat belts must be worn at all times, plaintiff also alleged Chrysler failed to provide an adequate warning alerting occupants that the use of a soft top and doors did not provide adequate occupant protection *1083 and that seat belts were required for safe use of a soft top and doors.
The jury found that the Jeep, as originally manufactured by Chrysler, was not defective, nor were the Bestop soft top and doors defectively designed. The jury also exonerated Chrysler on the warning claim. As to the failure to warn claim against defendants Bestop and Sears, the jury found that Bestop and Sears failed to warn consumers of the dangers attendant to the use of their product. The jury found, however, that their failure to warn was not a proximate cause of plaintiff's injuries. Plaintiff's motion for a judgment notwithstanding the verdict, limited to defendants Bestop and Sears and the failure to warn issue, was denied.
Plaintiff now appeals only as to the jury verdict on the failure to warn claim against defendants Bestop and Sears.[1]

II.
With respect to the issues relevant to this appeal, the following interrogatories were submitted to the jury without objection by plaintiff:
4. Do you find that Defendants, Sears and Bestop failed to adequately warn and instruct users that the soft top and doors would not retain occupants in the CJ7 and would provide no protection against injury in the event of even a minor accident and, therefore, it was necessary to wear seat belts at all times in order to safely use their product?
5. If your answer to question 4 is Yes, do you find that had such warning and instruction been provided that Plaintiff probably would have followed the warnings and instruction and worn his safety belts?
As noted earlier, in response to Interrogatory No. 4, the jury found that Sears and Bestop failed to adequately warn users of the dangers associated with the use of the soft top and doors, but it answered Interrogatory No. 5 concerning proximate cause in the negative.
Plaintiff now argues, as he did before the trial court in his motion for a new trial, that Interrogatory No. 5 misstates the law and had the capacity to produce an unjust result. Specifically, plaintiff contends that the use of the word "probably" in Interrogatory No. 5 placed an unfair burden on him. Because plaintiff failed to object to the form of Interrogatory No. 5 in a timely fashion, we are required to consider plaintiff's argument under the plain error standard. R. 2:10-2.
In the context of a duty to warn case, plaintiff has the burden of proving, by a preponderance of the evidence, that the product was defective, i.e. the manufacturer did not warn the consumer of the risks attendant to the product, and that the failure to warn was a proximate cause of plaintiff's injuries. See Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 485 A.2d 305 (1984). In this case, plaintiff satisfied his burden of proof with regard to the warning defect. The issue here is one of causation. As noted by our Supreme Court, "[c]ausation is a fundamental requisite for establishing any product-liability action." Coffman v. Keene Corp., 133 N.J. 581, 594, 628 A.2d 710 (1993). That is to say, in order to satisfy the burden of proof required in a failure to warn case, a plaintiff must prove that the absence of the warning was a proximate cause of his harm. Id. at 594, 628 A.2d 710 (citing Campos, supra.).
In Coffman v. Keene, supra, the Supreme Court recognized the difficulties encountered by plaintiffs in proving proximate causation in failure to warn cases and adopted a heeding presumption to assist plaintiffs in overcoming the hurdle.[2] In that case, plaintiff was exposed to various quantities of asbestos while working on naval vessels. 133 N.J. at 590-93, 628 A.2d 710. Plaintiff brought suit against defendant Keene and others for injuries allegedly contracted from exposure to their products. Ibid. The basis of plaintiff's complaint was that defendants failed to warn *1084 consumers of the health risks associated with the use of asbestos products. Ibid.
At trial, Keene claimed that plaintiff failed to establish proximate causation between its failure to warn consumers about the risks associated with asbestos products and plaintiff's injuries. Ibid. Despite plaintiff's failure to present such direct proof of causation, the trial judge disagreed with Keene and instructed the jury that it was to presume that plaintiff would have heeded the warning if one had been given. Ibid.
On appeal, this court found support for the heeding presumption in comment j to Section 402A of the Restatement (Second) of Torts, as well as in language contained in Campos. 257 N.J.Super. 279, 287-88, 608 A.2d 416 (App.Div.1992). Thus, we affirmed the trial judge's use of the heeding presumption.
On certification to the Supreme Court, the Court found, as a matter of public policy, that the heeding presumption should be recognized in New Jersey. 133 N.J. at 597, 628 A.2d 710. The Court explained that "[t]he heeding presumption ... serves to reinforce the basic duty to warnto encourage manufacturers to produce safer products, and to alert users of the hazards arising from the use of those products through effective warnings." Id. at 599, 628 A.2d 710. Cognizant of the difficulties plaintiff may have in establishing that the absence of a warning was a proximate cause of his injuries, the Court noted that the heeding presumption would serve to lighten the plaintiff's burden of proof on the issue of proximate causation. Id. at 600, 628 A.2d 710. In the Court's words, "[t]he use of the presumption will be conducive to determinations of causation that are not based on extraneous, speculative considerations and unreliable or self-serving evidence." Id. at 601, 628 A.2d 710. Therefore, "with respect to the issue of product-defect causation in a product-liability case based on a failure to warn, the plaintiff should be afforded the use of the presumption that he or she would have followed an adequate warning had one been provided, and that the defendant in order to rebut that presumption must produce evidence that such a warning would not have been heeded." Id. at 603, 628 A.2d 710. In the absence of evidence produced by the defendant rebutting the heeding presumption, the plaintiff is entitled to a directed verdict on the proximate cause element of a failure to warn cause of action. Ibid.
In Graves v. Church & Dwight Co., Inc., 267 N.J.Super. 445, 631 A.2d 1248 (App.Div.), certif. denied, 134 N.J. 566, 636 A.2d 523 (1993), a case decided at the same time as the Supreme Court's decision in Coffman, this court recognized the use of the heeding presumption in a non-workplace setting. There, the plaintiff suffered a stomach rupture after ingesting an excessive amount of baking soda. Id. at 450-56, 631 A.2d 1248. The plaintiff brought suit against the baking soda manufacturer, Church & Dwight, for failing to warn consumers of the dangers associated with ingesting its product in quantities greater than recommended by the manufacturer. Ibid. Although the jury in that case found that the product was defective by reason of its failure to warn, it found that the failure to warn was not a proximate cause of plaintiff's injury. Ibid.
Consistent with the analysis of the Coffman Court, although not having the benefit of the Supreme Court decision at the time Graves was filed, Graves advanced Coffman one step further and held that the heeding presumption has general application and is not simply applied just to asbestos or workplace products. Id. at 459, 631 A.2d 1248. The Graves court noted that the effect of the heeding presumption "is to require defendant to come forward with evidence sufficient to rebut the presumption, or risk a directed finding against it as to the presumed fact," i.e. that the warning would have been heeded, and thus, the failure to warn was a proximate cause of plaintiff's injury. Id. at 460, 631 A.2d 1248. Thus, the court recognized that if the defendant presents rebuttal evidence sufficient to create a genuine issue of fact as to whether the presumed fact exists, the issue must be resolved by the jury. Ibid. According to the court, "[t]he burden of coming forward with evidence to rebut the presumption is on the defendant, but the burden of proof never shifts from the plaintiff." Ibid. (citation omitted). Accordingly, "once the presumption is rebutted, the *1085 risk of non-persuasion remains with the party upon whom the burden of proof was originally placed, in this case, the plaintiff," and the jury should not be instructed on the presumption. Id. at 460-61, 631 A.2d 1248.
Despite the peculiar circumstance that the Supreme Court's opinion in Coffman and our opinion in Graves were issued simultaneously, the rules established in both cases are substantially consistent in their application of the heeding presumption. Commentators on the subject, however, have identified one area of perceived conflict between the two decisions pertaining to the issue of burden shifting under the presumption. There is a passage in Coffman that states: "[t]he use of a rebuttable heeding presumption will serve to shift plaintiff's burden of proof on the issue of causation as it relates to the absence of a warning." 133 N.J. at 603, 628 A.2d 710. The Graves court, however, described the issue of burden shifting as one where the defendant has "[t]he burden of coming forward with evidence to rebut the presumption[,]... but the burden of proof [on proximate cause] never shifts from the plaintiff." 267 N.J.Super. at 460, 631 A.2d 1248; cf. Facendo v. S.M.S. Concast, Inc., 286 N.J.Super. 575, 585, 670 A.2d 44 (App.Div.1996) (recognizing the burden shifting analysis in Graves). Some commentators have suggested that the language in Coffman shifts the burden of persuasion on the issue of causation to the defendant and, thus, implicitly overrules Graves on this issue. See Dreier, Goldman & Katz, New Jersey Products Liability & Toxic Torts Law § 8:3-6, at 176 (1998) ("Note that Graves holds that the burden of proof does not shift when the heeding presumption is in effect and that the jury, therefore need not have the presumption called to its attention. In this regard Graves, which had relied on the Appellate Division decision in Coffman, is implicitly overruled by the Supreme Court rulings in Coffman and Theer, at least with regard to workplace cases."); Kevin J. O'Connor, Comment, New Jersey's Heeding Presumption in Failure to Warn Product Liability Actions: Coffman v. Keene Corp. and Theer v. Philip Carey Co., 47 Rutgers L.Rev. 343, 370 (1994) ("The New Jersey Supreme Court embraced the use of a heeding presumption with full realization that it was `departing from the general governing rule that the plaintiff bears the burden of proving causation.'"); see also John L. McGoldrick & Frederick T. Smith, New Jersey Product Liability Law § 3-19, at 124-25 (1994).
Despite the commentators' concerns, Graves and Coffman are reconcilable. We are satisfied that when Coffman is read as a whole, the only burden shifting stemming from the heeding presumption is with respect to the burden of production. That is to say, once the heeding presumption comes into play, the burden of coming forward with evidence, i.e. the burden of production, shifts to the defendant to overcome or rebut the presumption. As noted in Graves, the defendant's failure to produce evidence at this stage "risk[s] a directed finding against it" on the issue of proximate causation. 267 N.J.Super. at 460, 631 A.2d 1248. If, however, the defendant satisfies its burden of production, that is, if defendant presents sufficient evidence to rebut the presumption, an issue we deal with below, the presumption disappears and the plaintiff, consistent with his original burden of persuasion, must prove by a preponderance of the evidence that the failure to warn was a proximate cause of his injury. When the Supreme Court stated in Coffman that the "heeding presumption will serve to shift plaintiff's burden of proof on the issue of causation," the Court was simply indicating that if defendant fails to produce sufficient evidence to rebut the presumption, plaintiff is relieved of proving proximate causation. See Coffman, supra, 133 N.J. at 604, 628 A.2d 710 (recognizing case law which observes that once the presumption is rebutted by evidence, the "presumption disappears and goes for naught").
This reconciliation of the burden shifting analysis in Coffman and Graves is consonant with our Rules of Evidence concerning evidentiary presumptions. N.J.R.E. 301 expressly provides,
... a presumption discharges the burden of producing evidence as to a fact (the presumed fact) when another fact (the basic fact) has been established. *1086 If evidence is introduced tending to disprove the presumed fact, the issue shall be submitted to the trier of fact for determination unless the evidence is such that reasonable persons would not differ as to the existence or nonexistence of the presumed fact. If no evidence tending to disprove the presumed fact is presented, the presumed fact shall be deemed established if the basic fact is found or otherwise established. The burden of persuasion as to the proof or disproof of the presumed fact does not shift to the party against whom the presumption is directed unless otherwise required by law. ...

[Ibid. (emphasis added).]
Although there are extraordinary cases in which our courts have held that the burden of persuasion does shift, those cases are by far the exception, and not the rule. (For a discussion of this rule and accompanying cases, see Biunno, New Jersey Rules of Evidence, comment 8 on N.J.R.E. 301 (1997-98).) In the typical case, the principle established by N.J.R.E. 301 is followed, and a presumption does no more than shift the burden of production to the party against whom it is directed. The shifting of the burden of production, however, has no effect on the ultimate burden of persuasion, which at all times remains with the party upon whom the burden of persuasion is originally placed.[3] If the Coffman Court intended to change this well-established rule we would have expected it to have made the announcement in a somewhat more expansive fashion, because the new rule would have effectively overruled its decision in Campos, which clearly places the burden of persuasion to prove proximate cause on the plaintiff in a failure to warn case. See Campos, supra, 98 N.J. at 209-10, 485 A.2d 305 (explaining that the "plaintiff had the burden of proving that the failure to give adequate warnings was a proximate cause of the accident and injuries...."). Furthermore, we think that the Court would have granted certification in Graves to correct our error if its decision in Coffman intended to shift the burden of persuasion.
Thus, by way of summary, the heeding presumption applies to all failure to warn and inadequate warning cases and provides the plaintiff with a rebuttable presumption on the issue of proximate cause, i.e., if a warning or instruction had been given, such warning or instruction would have been heeded by the plaintiff. In such cases, the burden of production on the issue of proximate cause shifts to the defendant to come forward with rebuttal evidence. In essence, the defendant's burden of production requires "evidence sufficient to demonstrate... that a warning would have made known to the plaintiff the danger of the product and, notwithstanding the knowledge imparted by the warning, the plaintiff would have proceeded voluntarily and unreasonably to subject him or herself to the dangerous product." Coffman, supra, 133 N.J. at 604, 628 A.2d 710. If the defendant fails to meet its burden of production to the trial court's satisfaction, the trial judge is required to direct a verdict in favor of the plaintiff on the issue of proximate causation. If, however, the defendant presents rebuttal evidence such that reasonable minds could differ as to whether the warning, if given, would have been heeded by the plaintiff, the defendant has satisfied its burden of production and the plaintiff loses the benefit of the presumption. The plaintiff must then carry the burden of persuasion as to proximate cause.
Thus, plaintiff's contention that he was not required to prove that he "probably" would have followed a warning if given is without merit. Plaintiff's reliance on Campos v. Firestone, supra, 98 N.J. at 210, 485 A.2d 305, Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 402-03, 451 A.2d 179 (1982), Crispin v. Volkswagenwerk A.G., 248 N.J.Super. 540, 564, 591 A.2d 966 (App.Div. 1991), and Vallillo v. Muskin Corp., 212 N.J.Super. 155, 160, 514 A.2d 528 (App.Div. 1986), to support his argument that he only was required to prove that he "might" have *1087 heeded the warning if given is misplaced. Those cases do not deal with the issue of burden of proof, but rather pertain to the issue of whether a defendant has a duty to warn in the first instance. Further, plaintiff's reliance on Dafler v. Raymark Indust., Inc., 259 N.J.Super. 17, 39, 611 A.2d 136 (App.Div.1992), and Stephenson v. R.A. Jones & Co., Inc., 103 N.J. 194, 199, 510 A.2d 1161 (1986), for the proposition that a plaintiff may prove proximate cause by showing only a small percentage of fault by a defendant, a standard significantly less than the 50.1% required under the preponderance standard, is also misplaced. Plaintiff confuses the concept of burden of proof by a preponderance of the evidence, which is the standard required to prove a defect and proximate cause in the first instance, and the concept of apportionment of fault, which occurs only after there has been a determination that a defective product was, more likely than not, a proximate cause of plaintiff's injury. The passages in Dafler and Stephenson relied on by plaintiff address apportionment issues, not proximate cause issues.
It is clear that the form of Interrogatory No. 5 is an accurate statement of our law regarding plaintiff's burden of persuasion on the issue of proximate cause once the heeding presumption has been rebutted. By directing the jury to determine, "if a warning and instruction [had] been provided, [whether] Plaintiff probably would have followed the warnings and instruction and worn his safety belt" (emphasis added), the interrogatory simply reflected the preponderance standard that is applicable in proving a product liability cause of action. See N.J.S.A. 2A:58C-2. To state it somewhat differently, the jury was presented with the question that if a warning had been given by defendants regarding the safe use of the soft top and doors, whether it was more likely than not that plaintiff would have heeded such a warning. We, therefore, find no error in the interrogatory.

III.
Plaintiff's second claim pertains to the substantive proofs necessary to rebut the heeding presumption. This issue requires that we examine defendants' rebuttal evidence.
During pre-trial discovery, plaintiff admitted to having consumed three bottles of beer in Belmar prior to the accident. Because of the seriousness of plaintiff's injuries, however, no tests were conducted to determine whether plaintiff was intoxicated.
Prior to the commencement of trial, plaintiff made a motion in limine for, among other things, an order barring any reference to the consumption of alcoholic beverages by the plaintiff or his presence in a bar prior to the accident. The court granted plaintiff's motion, barring the testimony under N.J.R.E. 403.
[As to] the consumption of alcoholic beverages[,][y]ou have the admission by the plaintiff that he did consume some, at least three beers, 12 oz. bottles of beer during a three hour period. You also have the state trooper saying he noticed an odor of alcohol on the breath of the plaintiff. Other than that there is nothing that would support a conclusion on the part of the jury that alcohol was in any way a factor in what took place on the roadway.
To allow the testimony in about the fact that the plaintiff did consume some alcoholic beverages with nothing more than that would, in the court's opinion be exactly the type of testimony which Rule 403 speaks to. It may be relevant and have some probative value but that probative value would be far outweighed by the undue prejudice ... that it would cause.
... I'm going to bar any testimony as far as the consumption of alcohol by the plaintiff. Now, depending upon on how plaintiff's case goes in, the court may have to modify that ruling. For instance, if the plaintiff testifies that he was engaged during these hours of ten to one in some other type of activities, certainly then the issue of credibility, I'd have to let the defendant address the actual whereabouts of the plaintiff. So for now I'm going to bar any testimony as to the drinking.
On direct examination, plaintiff testified regarding his practice of wearing seat belts. He said that he always wore a seat belt when he operated the Jeep without the doors and *1088 top. He did not, however, wear his seat belt when the top and doors were on, regardless of whether Chrysler's hard top and doors or Bestop's soft top and doors were being utilized. Plaintiff said that he did not wear his seat belt when either top was on because he "felt very safe" and did not perceive any risk of being thrown from the vehicle. When asked on redirect examination if he would have worn a seat belt when using the soft top and doors if a warning had been provided that the soft top only protects occupants from the elements and never to rely on the soft top and doors to contain occupants in the vehicle, plaintiff indicated that he would have worn a seat belt.
Following plaintiff's testimony on redirect examination, defense counsel requested that he be allowed to attack plaintiff's credibility in light of his testimony that he would have obeyed a warning to wear a seat belt when using the soft top and doors if one had been provided. Specifically, the defense requested permission to question plaintiff on whether he heeded the warnings which were already provided by Chrysler on the sun visor of the Jeep, which cautioned: "WEAR SEAT BELTS AT ALL TIMESDON'T DRINK AND DRIVE." Plaintiff vigorously objected to any questions concerning plaintiff's drinking and driving, claiming that the introduction of such evidence would unduly prejudice him. Plaintiff argued that the court's decision on the motion in limine prohibited the introduction of such testimony.
The trial judge permitted defendants to question plaintiff as to whether he heeded both the "WEAR SEAT BELTS AT ALL TIMES" and "DON'T DRINK AND DRIVE" warnings that were provided on the sun visor. The trial judge, however, remained steadfast in his position, pursuant to his decision on the motion in limine, that no testimony could be adduced regarding plaintiff's consumption of alcohol during the night and early morning hours prior to the accident.
Now, I said that I wasn't going to permit questions dealing with drinking and driving because of ... the undue prejudice that that would create, even though I am talking about as far as the warning, and that certainly would go to the presumption that the plaintiff would heed any warnings given.
I'm still not going to permit questions to be addressed as to drinking and driving on the night in question, but as far as the warning that's set forth on the sun visor, wear seat belts at all times, don't drink and drive, I'll permit questions to be addressed to the plaintiff as follows, before you get to the question as to generally speaking, drink[ing] and driving not on the day in question, but generally speaking so that the jury doesn't attach any undue significance to the drinking and driving warning....
The court then discussed with defense counsel, outside of the presence of the jury, what questions he would permit.
When the jury returned, the following questioning of the plaintiff took place:
Q. Mr. Sharpe, on redirect your counsel asked you about the sticker on the visor....
A. Yes.
Q. And he asked you about ... that if there was a warning on the visor that clearly told you, clear warning that told you that the doors and fabric top were only for protection against the elements, [and] not to reply [sic: rely] on them to contain occupants in the vehicle, ... you ... would... have followed that warning. Correct?
A. Yes.
....
Q. There is a warning on the label [on the sun visor] that says wear seat belts at all times. Isn't there?
A. Yes, there is.
Q. That's a pretty clear warning?
A. Yes.
Q. You did not follow that clear warning?
A. That's correct.
Q. And [there's] a warning on the visor that says don't drink and drive. That's a pretty clear warning?
A. Yes, sir, it is.
Q. No doubt about what that means?
A. No.

*1089 Q. And there were occasions, were there not, when you did drink and drive this vehicle?
A. Yes, I did.
Q. So, you didn't follow that clear warning either.
A. No, sir.
At that point, the trial judge provided the jury with an instruction on the limited purpose of this line of questioning.
Let me just caution the jury. I've permitted this line of questioning to be addressed to Mr. Sharpe for one purpose only and that is to get to the issue as to his observation of any warnings that may be set forth in the vehicle. For that purpose and that purpose only.
Defense counsel resumed his examination of the plaintiff with one final question:
Q. Mr. Sharpe, you're a college graduate. Understanding those warnings, you chose of your own free will when to follow them and when to ignore them, correct?
A. Yes.
Plaintiff argues on appeal, as he did in his motion for a new trial before the trial judge, that the judge improperly permitted testimony about drunk driving. Plaintiff, relying on Gustavson v. Gaynor, 206 N.J.Super. 540, 503 A.2d 340 (App.Div.1985), certif. denied, 103 N.J. 476, 511 A.2d 655 (1986), argues that the questioning regarding plaintiff's consumption of alcohol was irrelevant and, even if it had limited relevance in this case, should have been excluded under N.J.R.E. 403. Plaintiff also argues, as he did below, that the warning "DON'T DRINK AND DRIVE" is ambiguous and is subject to several meanings.
We reject plaintiff's argument that the issue of alcohol consumption may never be introduced. Although the plaintiff is correct in citing Gustavson for the principle that evidence of alcohol consumption, standing alone, is irrelevant to support the inference that a driver was intoxicated or that the consumption of alcohol was a contributing factor in causing an accident, this general exclusion does not pertain to the present case. There was no evidence presented to the jury that plaintiff had been drinking on the night in question, or that he spent the three hours prior to the accident in a bar.
The issues raised by the plaintiff, however, present important questions concerning the type of evidence that is necessary to overcome the heeding presumption. Although our courts have addressed various issues relating to the heeding presumption on four separate occasions since the decisions in Coffman/Theer and Graves,[4] none have had occasion to fully define the type of evidence necessary to rebut the presumption, or the manner in which it must be assessed and presented. We now have occasion to do so.
In general, there are two methods by which a defendant may rebut the heeding presumption. The first method is by offering evidence concerning the plaintiff's knowledge of the very risk that the absent warning was supposed to address. "[A] plaintiff's knowledge of a certain risk, irrespective of the existence of a warning, may directly affect the issue of causation." Coffman, supra, 133 N.J. at 603, 628 A.2d 710; accord Vallillo, supra, 212 N.J.Super. at 160, 514 A.2d 528. The second method is to introduce evidence of plaintiff's attitudes and conduct apart from knowledge of the product's risk that demonstrates an indifference to safety warnings. Theer, supra, 133 N.J. at 621, 628 A.2d 724; Graves, supra, 267 N.J.Super. at 462, 631 A.2d 1248.
This case deals primarily with the latter method. In determining what type of evidence a defendant may present to rebut the presumption under this method, whether it be through cross-examination of the plaintiff or through the testimony of other witnesses, it must be remembered that the purpose of the rebuttal evidence is to create a jury question as to whether the plaintiff is *1090 the type of person who ordinarily would not follow safety warnings when given. The evidence, therefore, must be such that a jury could fairly infer that because the plaintiff did not heed safety warnings in other circumstances, it is likely that a warning would not have been heeded if given in the circumstances of the particular case. Thus, the type of evidence that may be introduced to rebut the heeding presumption must be sharply focused on the question of whether plaintiff is the type of person who ordinarily does not follow safety warnings when given. See Coffman, supra, 133 N.J. at 604, 628 A.2d 710; Theer, supra, 133 N.J. at 621-22, 628 A.2d 724; Graves, supra, 267 N.J.Super. at 462, 631 A.2d 1248.
A defendant therefore cannot present evidence that will merely show that plaintiff does not follow warnings or instructions not related to safety. For example, evidence demonstrating that plaintiff opens his cereal box from the bottom, contrary to instructions on the box, is not the type of evidence that will be probative in showing that plaintiff is the type of person to ignore warnings that will subject the user to harm from a dangerous product. In contrast, a defendant may, for example, delve into a plaintiff's observance of dosage requirements on medications or the Surgeon General's warning on cigarette packages.[5]
Stating that the rebuttal evidence must be directed to instructions and warnings related to safety does not, however, completely exhaust the inquiry. As demonstrated by this case, a question may arise as to whether the plaintiff understood the safety warnings which defendant claims plaintiff did not heed. An additional, and important question is, what level of nonobservance must a defendant demonstrate to show that a plaintiff is the type of person who does not heed safety warnings?
We turn to the New Jersey Product Liability Act (PLA) for guidance in answering the first question. The PLA requires that the adequacy of warnings be evaluated by an objective standard. See N.J.S.A. 2A:58C-4. Consistent with the PLA's requirement then, the adequacy of a warning is based on a reasonable person's interpretation of it. We see no reason to divert from that practice in the heeding presumption context. Thus, whether a plaintiff failed to heed a warning related to safety must be determined on the same objective basis, rather than plaintiff's subjective understanding of what a particular warning means. For example, if the defendant were to inquire into plaintiff's observance of a warning on a bottle of medicine that cautions the user against mixing alcohol with the medication because of some adverse affect on the heart, plaintiff's observance of the warning would be judged by how a reasonable person would interpret that warning. For the purposes of this example, a reasonable person reading such a warning would conclude that alcohol should not be consumed during the period that the medication is prescribed. Thus, if a plaintiff testifies that he has a few glasses of wine at dinner every evening, he cannot attempt to explain away his failure to heed the warning because he subjectively felt the warning was not so rigid as to prohibit a "harmless" glass or two of wine at dinner. So long as the warning or instruction is clear enough that the reasonable person using the product would understand the instruction being given, the warning is sufficient. By imposing the requirement that the issue of whether a warning is ambiguous and, if not, whether it was heeded, be based on how a reasonable person would interpret it, we remain consistent with extant principles of law pertaining to warnings.
It is not enough, however, simply to present evidence that shows a plaintiff has failed to heed a safety warning. The mere showing that a plaintiff has on occasion failed to heed safety warnings is not sufficient proof that plaintiff is the type of person who is indifferent to personal safety. Under our evidence rules, "[e]vidence of a person's character or a trait of his character, including a trait of care or skill or lack thereof, is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion...." N.J.R.E. 404(a). Thus, to the extent that a defendant may attempt to introduce evidence of plaintiff's occasional deviation *1091 from health and safety warnings to prove that he would have acted in conformity therewith, our evidence rules do not allow the admission of such evidence. While character evidence, in general, is inadmissible to show that a person acted in a similar way on the occasion at issue, when the evidence rises to the level of "habit" or "routine practice" our rules do permit the introduction of such evidence. That is, evidence of "habit" or "routine practice" is admissible "to prove that on a specific occasion a person ... acted in conformity with the habit or routine practice." N.J.R.E. 406(a). Further, "habit" or "routine practice" may be proven by evidence of "specific instances of conduct" where "evidence of a sufficient number of such instances is offered to support a finding of such habit or routine practice." N.J.R.E. 406(b). It is consistent with our evidence rules then that a defendant may only introduce rebuttal evidence of plaintiff's failure to heed warnings if such evidence rises to the level of habit or routine practice. Again, we return to the general principle that a defendant's purpose in presenting rebuttal evidence is to show that the plaintiff would have acted in a manner consistent with prior instances of not heeding safety warnings and, thus, even if the defendant had provided an adequate warning, plaintiff would not have followed it.
For example, following the hypothetical presented above, if the defendant adduced testimony that plaintiff had failed to follow the instructions on the medicine bottle on a few occasions, such evidence does not necessarily prove that plaintiff is the type of person who ordinarily does not heed safety warnings. Certainly, occasional lapses of inattentiveness cause even reasonable people to deviate from safety warnings. If we were to reduce the quantum of evidence necessary to rebut the heeding presumption to occasional lapses of inattentiveness, it would effectively render the presumption moot and undermine its purpose.
Rather than adducing evidence of aberrant or occasional behavior on the part of a plaintiff, we hold that the appropriate quantum of evidence needed to rebut the heeding presumption is that which will demonstrate that a given plaintiff has a "habit" of ignoring safety warnings. See Magro v. Ragsdale Bros., Inc., 721 S.W.2d 832 (Tex.1986). In essence, when evidence is adduced that a plaintiff would have followed a warning if given, or where no direct evidence is adduced but the plaintiff is simply relying on the presumption, the plaintiff's credibility or character as a heeder of health and safety warnings is in issue. See Graves, supra, 267 N.J.Super. at 462, 631 A.2d 1248. Under such circumstances, what the defendant is attempting to prove by the introduction of rebuttal evidence is that plaintiff, as a person who fails to heed safety warnings, would have acted in conformity with that practice in the circumstances of the particular case and would not have heeded an adequate warning if given.
In sum, we conclude that in order for evidence to be admissible to rebut the heeding presumption and demonstrate that plaintiff is the type of person that is indifferent to safety warnings, the defendant must adduce evidence, either from the plaintiff or other witnesses, that the plaintiff has in the past failed to heed safety warnings as construed by the reasonable user, and that the plaintiff's indifference to the warning rose to the level of habit. Only under such circumstances will the evidence be admissible to rebut the heeding presumption and give rise to a jury question as to whether plaintiff would have followed a safety warning in the circumstances of a particular case had it been given. As a matter of trial practice, we suggest that the trial judge hold a N.J.R.E. 104 hearing to determine whether the evidence which the defendant will proffer to rebut the heeding presumption meets these requirements.
We now apply these principles to the case before us. The rebuttal evidence offered by the defendants satisfies the first two elements of the test. That is, both warnings, "WEAR SEAT BELTS AT ALL TIMES" and "DON'T DRINK AND DRIVE," are safety related warnings. Furthermore, both warnings are unambiguous and understandable by a reasonable person. "WEAR SEAT BELTS AT ALL TIMES" means that an occupant of the vehicle should wear his or her seat belt any time the vehicle is in operation. *1092 Similarly, "DON'T DRINK AND DRIVE" is commonly understood by reasonable persons to mean that one should not drive a vehicle after the consumption of alcohol where such consumption may impair that person's ability to operate the vehicle safely.
The problem with the rebuttal evidence adduced by defendants is with the third element of the test, i.e., whether the evidence of plaintiff's failure to heed these warnings rose to the level of habit or routine practice. The complete testimony on the subject was recited earlier and need not be repeated again.
Suffice it to say that the rebuttal evidence pertaining to the warning to "WEAR SEAT BELTS AT ALL TIMES" was properly admissible. Sufficient evidence was presented indicating that plaintiff had a habit of not wearing his seat belt when a top and doors were on the Jeep. A jury could reasonably conclude that plaintiff's violation of that clear warning was unreasonable and exhibited a disregard of personal safety.
Where we find error, however, is in defendants' questioning of plaintiff on the "DON'T DRINK AND DRIVE" warning. There is nothing in the record from which a jury could fairly infer that plaintiff had a habit of driving while impaired, or that he did so as a routine practice. Indeed, defense counsel's cross-examination of plaintiff on this point asked only if there were "occasions" when plaintiff failed to heed the "DON'T DRINK AND DRIVE" warning. As noted earlier, a plaintiff's admission that he occasionally did not heed a warning is not admissible to prove that plaintiff is the type of person that ordinarily will not follow safety warnings.
Although we find error in the manner in which plaintiff was asked about the "DON'T DRINK AND DRIVE" warning, only errors that are "clearly capable of producing an unjust result" require reversal. R. 2:10-2. We do not believe the error committed here rose to that level. The premise that undergirded plaintiff's case was that he sustained serious injuries as a result of being thrown from the vehicle upon impact because he was not wearing a seat belt. Plaintiff claimed he would have worn a seat belt had he been adequately warned. In point of fact, plaintiff had read and understood Chrysler's unambiguous warning to "WEAR SEAT BELTS AT ALL TIMES." Further, it was clearly established that plaintiff had a habit of not following that warning when there was a top on the vehicle, whether it was Chrysler's top or Bestop's top. In our view, plaintiff's failure to follow that clear warning was overwhelming evidence of his inability to establish proximate causation between the absence of an additional warning by Bestop and plaintiff's failure to wear a seat belt. The evidence of plaintiff's alcohol use was limited to occasions other than the evening of his accident, and there was no effort by the defendants to link consumption of alcohol to the accident itself. Further, the reference to alcohol consumption was very brief and simply paled in comparison to plaintiff's failure to obey a warning that was directly linked to the premise of his case against the defendants. In sum, we cannot conclude that the verdict would have been any different had there been no mention of plaintiff's prior alcohol use.

IV.
Plaintiff also raises the argument that the judge's limiting instruction on the use of the rebuttal evidence was in error. Specifically, plaintiff objects to the following limiting instruction:
Let me just caution the jury. I've permitted this line of questioning to be addressed to Mr. Sharpe for one purpose only and that is to get to the issue as to his observation of any warnings that may be set forth in the vehicle. For that purpose and that purpose only.
Plaintiff argues that the use of the word "observance" had the capacity to mislead the jury on the use of such evidence. We agree that the word "observance" can either connote the concept of "obeyance" of the warning or the ability to "see" the warning. Plaintiff argues that it is the latter context that is objectionable in light of the alcohol evidence.
While the judge's choice of words could have been better, we find no reversible *1093 error. Defendants' questioning of plaintiff did not suggest that the warning was not seen by him because he was impaired by the consumption of alcohol. Rather, the questions were directed to plaintiff in the context of whether he obeyed either warning which plaintiff conceded were understood by him. We believe that when the judge's limiting instruction is considered in the context of the manner in which the evidence was adduced, the jury was not misled into believing that the judge was permitting them to infer that plaintiff may not have seen the warning because of alcohol impairment.

V.
Although not an issue raised by either party, we have recognized an error in the record that requires comment. In his charge to the jury, the trial judge instructed the jury on the heeding presumption in the following manner:
The law presumes if a warning was required and if it had been given, it would have been followed. However, this presumption may be offset by proof by defendants that given his disregard for warnings that were given the plaintiff would have disregarded any additional warnings. In this case, the plaintiff is entitled to the presumption that he would have worn his safety belts if he was specifically warned that the soft top and soft doors would not protect him from injury in the event of an accident. However, the defendants contend this presumption is rebutted by plaintiff's disregard of the warnings that were given, such as the warning not to drink and drive and the warning always to wear a safety belt. Defendants contend that plaintiff would not have heeded any additional warnings.
This was incorrect.
As we stated in Graves, in New Jersey "there is a general prohibition against calling presumptions to the attention of a jury." 267 N.J.Super. at 461, 631 A.2d 1248. Thus, once the presumption is rebutted, the presumption "disappears and goes for naught." Coffman, supra, 133 N.J. at 604, 628 A.2d 710 (citation omitted). Accordingly then, the judge should simply charge the jury on the issue of proximate cause, using the same general concepts but not referring in any manner to the presumption.
Another panel of this court determined in Facendo v. S.M.S. Concast, Inc., 286 N.J.Super. 575, 586, 670 A.2d 44 (App.Div.1996), that where the heeding presumption had been abrogated by defendant's evidence, the jury should, nonetheless, be "instructed in accordance with the underlying basis for the heeding presumption" in order to "gain the full benefit of the doctrine." We do not interpret Facendo to require the trial judge to instruct the jury using the term "presumption" where the defendant has successfully rebutted it. Facendo acknowledges that in this State "there is a general prohibition against calling presumptions to the attention of a jury." Id. at 586, 670 A.2d 44 (quoting Graves, supra, 267 N.J.Super. at 461, 631 A.2d 1248). Rather, we read Facendo to require the judge to view the evidence and instruct the jury "on inferences that may, [nonetheless], be drawn from the evidence" notwithstanding the abrogation of the presumption. N.J.R.E. 301; see also Biunno, New Jersey Rules of Evidence, comment 6 on N.J.R.E. 301 (1997-98). We have no quarrel with that concept in general. We note, however, that the Coffman Court made it quite clear that the heeding presumption is not based upon natural inferences but, rather, as a matter of public policy. 133 N.J. at 597, 628 A.2d 710. Thus, any inferences deserving a special instruction would necessarily have to be based upon the evidence in a given case, as opposed to those that undergird the heeding presumption itself.
In summary, if the heeding presumption is negated by rebuttal evidence, it disappears, and the plaintiff is no longer entitled to the benefit of the presumption. An instruction to the jury in such circumstances that mentions the "presumption" and the policy that undergirds it provides the plaintiff with an undue comment on the issue of credibility to heed warnings and, accordingly, gives the plaintiff a disproportionate advantage on the issue of proximate cause which is not contemplated by the decisions in Coffman or Graves, or in the reasoning undergirding *1094 the application of the heeding presumption.
As a matter of practice, the only circumstance in which the jury should ever have to be instructed as to the principles that undergird the presumption is where the plaintiff is dead or otherwise incapable of testifying at trial. This is so because, in such a circumstance, the plaintiff would be unavailable to testify as to whether he would have heeded the warning if given. Even then, however, if the facts so justify the judge should simply instruct in terms of a permissible inference that may be drawn, rather than use the term "presumption." In all other situations, however, the plaintiff will be available to testify and tell the jury that he would have heeded the warning if given. In death cases, the "permissible inference" instruction is a fair substitute for the jury's ability to assess the credibility of a live plaintiff who testifies that he would have followed the warning had it been given. In either case, if the defendant fails to present evidence sufficient to rebut the presumption, a plaintiff is entitled to a directed verdict on proximate cause and the matter never reaches the jury. If, however, the defendant meets its evidentiary requirement of producing rebuttal evidence, then, as noted above, the presumption is negated and the jury should only be charged on general principles of proximate cause as the circumstances of the plaintiff dictate. See Model Jury Charge (Civil) § 5.34G(1) and (2) (February 1989/April 1995). In neither case would the presumption have to be called to the jury's attention.
In this case, the judge unnecessarily brought the presumption to the jury's attention. The judge should have simply charged the jury that they had heard conflicting evidence, in which the plaintiff indicated that he would have heeded a warning if given while the defendant raised a credibility question as to whether plaintiff in fact would have heeded the warning based on other situations where plaintiff demonstrated a disregard for safety warnings. From this, the jury simply should have been asked to evaluate the evidence and determine if, by a preponderance of the evidence, the plaintiff would have heeded a warning if it in fact had been given. Because this error actually favored plaintiff, the error does not warrant a new trial.
Affirmed.
WECKER, J.A.D., concurring.
I concur in affirming the judgment dismissing plaintiff's complaint and denying his motion for a new trial. I agree that it was error to allow evidence that plaintiff on occasion had failed to heed the warning "DON'T DRINK AND DRIVE." As Judge Keefe explained in Part III of the court's opinion, such evidence was insufficient to constitute habit evidence admissible under N.J.R.E. 406(a) and (b). I also agree that the error was harmless, given the overwhelming evidence that plaintiff was highly unlikely to have heeded an additional warning and to have worn his seat belt. Thus the error was not "clearly capable of producing an unjust result." R. 2:10-2.
I write separately with respect to the heeding presumption adopted by the Supreme Court in Coffman v. Keene Corp., 133 N.J. 581, 594, 628 A.2d 710 (1993), because I am not as convinced as my colleagues that the Court in Coffman meant only to shift the burden of producing evidence, and not the burden of proof, on the question whether the plaintiff would have heeded an adequate warning had that warning been given.
There is no doubt that plaintiff normally bears the burden of proving proximate causation in a product liability case, including one premised on a failure to warn. Id. at 594, 628 A.2d 710. However, the Court instructs us that "[t]he use of a rebuttable heeding presumption will serve to shift plaintiff's burden of proof on the issue of causation as it relates to the absence of a warning." Id. at 603, 628 A.2d 710 (emphasis added).
The Court's citation in Coffman, id. at 594, 628 A.2d 710, to Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 485 A.2d 305 (1984), for the proposition that plaintiff has the burden of proving proximate cause, is not inconsistent with placing the burden of proof on heeding on defendant, because in a failure-to-warn case, there are normally two aspects of proximate cause: (1) that the *1095 missing warning caused plaintiff to expose himself to the unwarned-of danger, because if the warning had been given, plaintiff would have heeded that warning and avoided the danger; and (2) that the unwarned-of danger caused the injury. Thus the Court described the heeding presumption, addressing only the first aspect of proximate cause, as "fairly reduc[ing] the victim's burden of proof," id. at 603, 628 A.2d 710, and not as entirely eliminating the plaintiff's proximate cause burden. On the unique facts of this case, where the unbelted passenger who was not thrown from the vehicle was uninjured, there could be no doubt about the second aspect of proximate cause: medical causation. All of plaintiff's injuries were clearly a result of being thrown from the car.
Coffman expressly adopted the heeding presumption in failure-to-warn cases as a matter of policy, id. at 597, 628 A.2d 710, to "provide[ ] a powerful incentive for manufacturers to abide by their duty to provide adequate warnings," id. at 599, 628 A.2d 710, and to avoid jury reliance on speculative, self-serving testimony of plaintiffs. Id. at 600-01, 628 A.2d 710. Coffman concludes as follows: "We hold that to overcome the heeding presumption in a failure-to-warn case involving a product used in the workplace, the manufacturer must prove that had an adequate warning been provided, the plaintiff-employee with meaningful choice[6] would not have heeded the warning." Id. at 609, 628 A.2d 710 (emphasis added). Addressing the concerns of potential defendants, the Court said: "Further, we do not see the requirement that the defendant prove that an employer[7] would not have heeded an adequate warning to posit an insuperable burden of proof or to impose absolute liability on manufacturers of defective products." Id. at 608, 628 A.2d 710. While that language is applicable solely in the context of a workplace injury, it supports the conclusion that the Court intended the heeding presumption to shift the burden of proof as well as the burden of producing evidence. Of course, once the defendant offers evidence (or points to evidence in the plaintiff's own case) that plaintiff would not have heeded a warning, the burden of producing rebutting evidence that he would have heeded the warning shifts to plaintiff.
At common law and pursuant to N.J.R.E. 301, a presumption normally shifts only the initial burden of producing evidence, and not the burden of proof, with respect to the fact that may be presumed. However, the rule allows room for the exceptional case: "The burden of persuasion as to the proof or disproof of the presumed fact does not shift to the party against whom the presumption is directed unless otherwise required by law." (Emphasis added). Coffman provides that law with respect to the heeding presumption.
Since the placement of the burden of proof (at least where proof by a preponderance of the evidence is the standard) is no more than a tie-breaking device, to be invoked when the evidence is in equipoise, resolution of its placement is unnecessary to our decision in this case. The properly admitted evidence with respect to the likelihood that plaintiff would have worn his seat belt, omitting that which we agree was improperly admitted, is not in equipose, and overwhelmingly supports the jury's conclusion that this plaintiff was highly unlikely to have heeded any seat belt warning. Thus although I conclude that the burden was on defendant to prove that plaintiff probably would not have worn his seat belt, that is, that he would not have heeded the missing warning, I also conclude that defendant's burden has been met.
NOTES
[1] All references to "defendants" hereafter are to defendants Bestop and Sears, since Chrysler is not a party to this appeal.
[2] Coffman was decided with a companion case, Theer v. Philip Carey Co., 133 N.J. 610, 628 A.2d 724 (1993), which also recognized the heeding presumption in New Jersey.
[3] See Fabian v. Minster Mach. Co., Inc., 258 N.J.Super. 261, 277 n. 5, 609 A.2d 487 (App.Div. 1992) (discussing a similar misinterpretation of the concepts stemming from a discussion of the "empty chair defense" in Brown v. United States Stove Co., 98 N.J. 155, 171, 484 A.2d 1234 (1984)).
[4] Fayer v. Keene Corp., 311 N.J.Super. 200, 709 A.2d 808 (App.Div. 1998); James v. Chevron U.S.A., Inc., 301 N.J.Super. 512, 694 A.2d 270 (App.Div.), certif. granted, 151 N.J. 471, 700 A.2d 882 (1997); Facendo v. S.M.S. Concast, Inc., 286 N.J.Super. 575, 670 A.2d 44 (App.Div. 1996); Calderon v. Machinenfabriek Bollegraaf Appingedam BV. 285 N.J.Super. 623, 667 A.2d 1111 (App.Div. 1995), certif. denied, 144 N.J. 174, 675 A.2d 1122 (1996).
[5] See Theer, supra, and Graves, supra, with respect to the latter inquiry.
[6] The modifier "with meaningful choice" places the employee in the same position as a victim injured in a non-workplace accident, and does not suggest to me that the holding is limited to a workplace failure-to-warn case.
[7] In the context of the workplace injury involved in Coffman, the Court adopted the heeding presumption both with respect to the employee and the employer.